646 A.2d 645

**Robert D. CHRISTIANA, Petitioner,**

**v.**

**PUBLIC SCHOOL EMPLOYES' RETIREMENT BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 2, 1994.

Decided July 28, 1994.

Petition for Allowance of Appeal Granted December 7, 1994.

Reed B. Day, for petitioner.

Louis J. Sheehan, Asst. Counsel, for respondent.

Before CRAIG, President Judge, and COLINS, McGINLEY, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

KELLEY, Judge.

Robert D. Christiana, the former Superintendent of the Upper St. Clair School District (District) appeals from an order of the Public School Employes' Retirement Board (Board) which denied the inclusion of certain annuities purchased for Christiana by the District in the calculation of his final average salary under the Public School Employes' Retirement Code (Retirement Code).[1]

The Board made extensive findings of fact. Those findings relevant to the present appeal may be summarized as follows. Christiana was first employed by the District in July, 1979 at the initial salary of $52,000. Christiana's salaries for the subsequent school years were:

|           |          |
|-----------|----------|
| 1980–1981 | $58,000  |
| 1981–1982 | $63,500  |
| 1982–1983 | $65,723  |
| 1983–1984 | $71,000  |

1. Act of October 2, 1975, P.L. 298, *as amended,* 24 P.S. §§ 8101–8104.

The following amounts were initially reported to the Public School Employes' Retirement System (PSERS) as Christiana's salary for the next five school years:

| | |
|---|---|
| 1984–1985 | $71,000 |
| 1985–1986 | $71,000 |
| 1986–1987 | $71,000 |
| 1987–1988 | $74,000 |
| 1988–1989 | $80,000 |

In November 1988, the Upper St. Clair School Board (School Board) became aware of Christiana's intention to retire from his position at the end of the 1988–1989 school year. Christiana formally retired in August, 1989.

At its November 14, 1988 meeting, the School Board adopted resolutions concerning the 1988–1989 salary and benefits payable to or for the benefit of Christiana. Among the resolutions was one which directed the District to provide Christiana "with an annuity or other equivalent payment at a cost to the District of $19,200 for the purposes of purchasing for the Superintendent pension credit under the State Retirement Plan...."

On January 9, 1989, the School Board met and rescinded its resolutions of November 14, 1988, adopting the following relevant resolutions in their place:

RESOLVED, that the District, in recognition of the superior manner in which the Superintendent has performed his duties and responsibilities, shall provide the Superintendent in calendar year 1988 with additional compensation in the amount of $9,500; and further,

RESOLVED, that the District shall, at or prior to the retirement of the Superintendent on June 30, 1989, pay to or on behalf of the Superintendent additional compensation in the amount of $9,700 plus an amount necessary to purchase for the Superintendent three years' pension credit under the State Retirement Plan in recognition of his service in the United States Air Force, as permitted by the laws of Pennsylvania.[2]

2. The amount necessary to purchase the pension credit for military service was slightly in excess of $20,000; however, Christiana does not

Pursuant to this resolution, the District purchased an annuity for Christiana in the amount of $9,500, but this expenditure was not directly reflected as Christiana's regular salary.[3] In contradistinction, the District in 1989 directly paid Christiana an additional $9,700 which increased his regular salary from $80,000 to $89,700. The $9,700 was separately accounted for and deducted from Christiana's take-home salary. The District purchased an annuity for Christiana with the payroll deductions.

The District reported to PSERS a total of $8,730 in payroll deductions starting in March 1989, through and including June 1989, to reflect the additional compensation called for by the January 9, 1989 School Board resolution.[4] After review of the School Board meeting minutes and resolutions, on January 19, 1990, PSERS declined to accept or recognize the reported $8,730 for retirement credit purposes.

By letter to PSERS dated February 9, 1990, the District resubmitted Christiana's reported salary for the 1988–1989 school year. The letter broadened the reporting period to encompass deductions made between January 1, 1989 and June 30, 1989, and adjusted the total salary accordingly. The letter read, in part:

> On the original 1st quarter report $970.00 of additional compensation was not reported in February, 1989.

> Further, in reviewing the report for the 4th quarter of 1988 we discovered that a payment of $9,500.00 to Dr. Christiana was also not reported.

> The District views these payments as merit increases, no different than merit pay which is paid in accordance with

seek to characterize this expenditure as "compensation" under the Retirement Code.

**3.** This annuity, and all others subsequently referred to, were purchased by the District pursuant to Internal Revenue Code § 403(b) which grants special tax advantages to school employees with respect to annuities purchased for them by their tax-exempt employers.

**4.** The $8,730 in payroll deductions reported to PSERS represented a $970 shortfall from the $9,700 deduction authorized by the School Board.

our negotiated agreement with the teachers of the School District.

At the administrative hearing held September 11, 1991 before a hearing examiner to consider the issue of whether the $19,200 (comprised of $9,500 + $9,700) (Enhancement II) paid to Christiana in the 1988–1989 school year should be considered Retirement Code compensation for the purposes of calculating the final average salary, PSERS was made aware that additional remuneration was awarded to Christiana not only in his final year of service but also for the four previous school years (1984–1988) (Enhancement I). At the hearing, for the first time Christiana sought to add Enhancement I to the salaries previously reported to PSERS for the respective years for inclusion as Retirement Code compensation.

According to the relevant School Board meeting minutes, the Enhancement I payments were intended to compensate Christiana "in lieu of salary increases" for the given years. The pertinent resolutions directed that the District purchase a single premium annuity for Christiana for the purposes of purchasing prior years seniority pension credit at the following amounts:

| | |
|---|---|
| 1984–1985 | $ 5,000 |
| 1985–1986 | $ 7,000 |
| 1986–1987 | $10,000 |
| 1987–1988 | $ 9,500 |

None of these amounts were reflected in Christiana's take-home pay, nor were the amounts formally reported to PSERS as salary.

The hearing examiner recommended that Enhancement II be excluded from the calculation of Christiana's final average salary because the amounts were properly characterized as non-includable "severance payments" under the Retirement Code. The hearing examiner recommended further that Enhancement I be included in the calculation of final average salary because such amounts were properly characterized as includable Retirement Code compensation. Christiana appealed to the Board.

Concerning Enhancement I, the Board concluded that Christiana's non-salary reduction tax shelter annuity pay-

ments may not be included in Retirement Code compensation because such payments are non-standard and/or non-regular remuneration as well as being bonuses and fringe benefits. Similarly, the Board concluded that the Enhancement II payments were components of a severance package none of which may be included in Retirement Code compensation because such payments must be characterized as non-includable bonuses and fringe benefits. It is from that order that Christiana now appeals to this court.

On appeal, Christiana argues (1) that he is entitled to have his final average salary adjusted in order to receive retirement credit for single premium tax-sheltered annuities purchased for him by his employer in lieu of salary increases; (2) that PSERS may not *sua sponte* utilize statistical and public policy considerations when denying a claim for retirement benefits which were not raised before the hearing examiner; (3) that the Board denied Christiana due process by overruling the hearing examiner without providing Christiana reasonable notice and an opportunity to be heard; and, (4) that the Board denied Christiana due process by commingling the prosecutorial and adjudicative functions in determining Christiana's eligibility for benefits.

We note that our scope of review from adjudications of administrative boards is limited to a determination of whether the board committed an error of law, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Finnegan v. Public School Employes' Retirement Board,* 126 Pa.Commonwealth Ct. 584, 560 A.2d 848 (1989).

Christiana first argues that the Board erred in failing to give effect to the relevant portions of the Fiscal Code of the Commonwealth [5] which expressly authorize the inclusion of tax-deferred income as credit for customary retirement plans. For five years, Christiana argues, the District purchased qualified tax-deferred annuities for Christiana in accordance with the Fiscal Code, which provides in relevant part:

5. Act of March 30, 1811, P.L. 145, *as amended,* 72 P.S. §§ 4521–4521.2.

> The state treasurer shall pay all grants, salaries, annuities, gratuities, and pensions established by law ... the treasurer or other officer in charge of payrolls for any ... political subdivision *may make systematic investments* in mutual funds, savings accounts or government bonds or make premium payments on life insurance or *annuity contracts* to any institution or company licensed and authorized ... *to accept deposits* ... *for the purpose of funding a deferred compensation program for employes.*

72 P.S. § 4521 (emphasis provided by Christiana).

Moreover, Christiana asserts, the Fiscal Code authorizes the purchase of annuities through a deferred compensation program:

> (a) The governing body of any ... political subdivision may, by contract, agree with any employe *to defer, a portion of that employe's compensation* and may subsequently, with the consent of the employe, *purchase ... annuity contracts....*

>           \*    \*    \*    \*    \*    \*

> (e) Such deferred compensation program *shall be in addition to,* and not a part of, *any other retirement benefit program provided by law* for employes of the ... political subdivision. *Income deferred* under programs authorized by this act *shall continue to be included as regular compensation for the purpose of computing deductions for employe contributions to retirement and pension programs and for the purpose of computing retirement and pension benefits earned by any employe.*

72 P.S. § 4521.1(a), (e), (emphasis provided by Christiana).

Christiana maintains that these provisions of the Fiscal Code permit the use of tax-deferred annuity payments which may be purchased by deferring a portion of an employee's compensation. Such deferred income, Christiana contends, is then to be included in the computation of the employee's retirement and pension benefits.

We cannot disagree with Christiana's reading of the Fiscal Code provision set forth above. However, his argument con-

tinues, advancing the assertion that the Board erred by characterizing the annuities as non-salary reduction purchases, or non-regular remuneration, thus rendering such payments ineligible for inclusion as compensation under its interpretation of the Retirement Code.

Section 8102 of the Retirement Code sets forth the following relevant definitions:

**"Compensation."** Pickup contributions plus any remuneration received as a school employee excluding refunds for expenses incidental to employment and excluding severance payments.

**"Final average salary."** The highest average compensation received as an active member during any three nonoverlapping periods of 12 consecutive months. . . .

**"Pickup contributions."** Regular or joint coverage member contributions which are made by the employer for active members for current service on and after January 1, 1983.

**"Severance payments."** Any payments for unused vacation or sick leave and any additional compensation contingent upon retirement including payments in excess of the scheduled or customary salaries provided for members within the same governmental entity with the same educational and experience qualifications who are not terminating service.

24 P.S. § 8102.

Section 211.2 of Title 22 of the Pennsylvania Code expands upon the definition of Retirement Code compensation, in pertinent part:

Excludes a bonus, severance payment or other remuneration or similar emoluments received by a school employe during his school service not based on the *standard salary schedule* for which he is rendering service. It shall exclude payments for unused sick leave, unused vacation leave, bonuses for attending school seminars and conventions, special payments for health and welfare plans based on the hours employed or any other payment or similar emolu-

ments which may be negotiated in a collective bargaining agreement for the express purpose of enhancing the compensation factor for retirement benefits.

22 Pa.Code § 211.2 (emphasis added).

Accordingly, the Board has developed general concepts in understanding the Retirement Code's meaning of "compensation": "standard salary" and "regular remuneration". Based upon its interpretation of the Retirement Code and accompanying regulations, standard salary and regular remuneration are defined by the Board as take-home cash, *including,* among others, (i) amounts withheld for tax remittances; (ii) amounts picked up as contributions to PSERS; and (iii) amounts appropriately deferred in qualifying deferred compensation programs, and *excluding,* fringe benefits, bonuses, severance payments, and *non-salary reduction Internal Revenue Code § 403(b) tax sheltered annuities.* Board's opinion, June 24, 1993, pp. 16–17 (emphasis added).

Based on its interpretation of the guiding statutes and regulations, the Board characterized both Enhancement I and II payments to Christiana as non-standard salary, non-regular remuneration, bonuses and fringe benefits. Additionally, the Board characterized Enhancement II as part of a severance payment. Therefore, the Board denied the inclusion of both the Enhancement I and Enhancement II annuity payments in the calculation of Christiana's final average salary.

The Board is charged with the execution and application of the Retirement Code and the Board's interpretation should not be overturned unless it is clear that such construction is erroneous. *Panko v. Public School Employees' Retirement System,* 89 Pa.Commonwealth Ct. 419, 492 A.2d 805 (1985). Accordingly, our review of the record suggests that the Board did not err in excluding the annuity payments from the calculation of Christiana's final average salary.

In each of the school years in which Christiana received an Enhancement I payment, the School Board adopted resolutions which directed that "in lieu of a salary increase" for that year, Christiana would benefit from the purchase of a single

premium annuity for the purpose of purchasing prior years seniority pension credit. Christiana testified that the Enhancement I annuity payments were used as a means of rewarding Christiana without representing to the taxpayers of Upper St. Clair that his "salary" was substantially increased each year. (Original Record, Transcript of Hearing held September 11, 1991, at pp. 16–18.) Christiana testified he believed that his total compensation included his base reported salary, plus the additional amounts provided for the purchase of the annuities. (*Id.* at pp. 25–26.) The District's business manager at the time, Richard Mancini, testified that in his opinion "there was no doubt" the annuity payments were compensation. (*Id.* at p. 67.)

Referring to the first annuity payment of $5,000 in 1984–1985, Dina J. Fulmer, a School Board member at the time testified as follows:

Q: What did you understand this $5,000 to be?

A: It was a—well, a reward for his performance. It was a way of compensating him which would not get our name in the paper again.

\* \* \* \* \* \*

Q: Why were the words in lieu of a salary increase chosen?

A: Well, in lieu of means instead of or actually in place of being that lieu is the French word for place. Rather than increasing his base salary, we just decided to purchase this annuity.

(*Id.* at pp. 83, 85.)

However, regardless of Christiana's or the District's contradictory understanding, the record reveals that the District did not pay pickup contributions on the annuity purchases made on behalf of Christiana beginning with the 1984–1985 school year.[6] Further, in its reports to PSERS, the District did not

---

**6.** Section 8102 of the Retirement Code defined "pickup contributions" as regular or joint coverage member contributions which are made by the employer for active members for current service on and after January 1, 1983.

report the Enhancement I payments as compensation paid to Christiana, nor did the District initially report any of the $19,200 Enhancement II payment to PSERS, as compensation or otherwise. Lastly, despite its apparent unwillingness to formally raise Christiana's base salary in the face of public opposition, Christiana did in fact receive two regular salary increases totalling $9,000 during the five year period under consideration.

With respect to Enhancement II alone, the record also supports the findings of the Board that the payments constituted part of a severance package. Christiana testified the Board was made aware of his intention to retire prior to their November, 1988 negotiations concerning his 1988–1989 salary and benefits. (*Id.* at 47–48.) What emerged from those deliberations were resolutions directing (i) that the District, "in recognition of the superior manner in which the Superintendent has performed his duties", pay Christiana additional compensation in the amount of $9,500 in 1988; and (ii) that the District pay Christiana an additional $9,700 at or prior to his retirement. (Original Record, PSERS Exhibit # 10B.)

While the record is silent as to whether Enhancement II was made *contingent* on Christiana's retirement, it is at the very least payment "in excess of the scheduled or customary" salary Christiana had enjoyed. Further, the final year salary and benefits package, of which Enhancement II was a part, included employer provided amounts for a financial planner, continuing medical coverage for Christiana and his wife, and a one-time offering of a salary reduction tax sheltered annuity. We find the record devoid of any evidence that Christiana's final year package was in accord with the District's regular and standard yearly compensation practices, particularly those involving Christiana himself over the ten year term of his employment.

The Retirement Code indicates that the General Assembly wishes to exclude from the computation of employees' final average salary all payments which may artificially inflate compensation for the purpose of enhancing retirement bene-

fits. *Dowler v. Public School Employes' Retirement Board,* 153 Pa.Commonwealth Ct. 109, 620 A.2d 639 (1993).

■ Christiana next argues that the Board erred by *sua sponte* utilizing financial statistics and public policy considerations not considered before the hearing examiner in denying Christiana's claim for retirement benefits. We disagree.

■ The Board, and not the hearing examiner, is the final fact finder in these cases. *Dowler.* As such, the Board may take official notice of facts which are obvious and notorious to an expert in the agency's field and those facts contained in the agency's files. *Falasco v. Pennsylvania Board of Probation and Parole,* 104 Pa.Commonwealth Ct. 321, 521 A.2d 991 (1987).

■ Next, Christiana asserts that in overruling the recommendations of the hearing examiner, the Board denied Christiana reasonable notice and an opportunity to be heard. Christiana contends that the Board made its determination in this matter without his participation and based its decision on facts and issues Christiana never had the opportunity to address.

The Administrative Agency Law, 2 Pa.C.S. § 504, states that "[n]o adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice and an opportunity to be heard." Christiana was presented with just these very opportunities and exploited them by filing a brief and reply brief prior to the hearing; attending the hearing and presenting evidence; and, filing exceptions to the hearing examiner's recommendations, followed by a response to the exceptions filed by PSERS. Our review of the record indicates that the Board studied the complete record, including the arguments advanced by Christiana, in reaching its decision.

■ Lastly, Christiana raises a due process challenge concerning the alleged commingling of prosecutorial and adjudicative functions between the PSERS and the Board. However, Christiana failed to raise this issue before the Board.

We have held that commingling claims may be waived if they are not raised before the administrative board. *Newlin Corp. v. Department of Environmental Resources*, 134 Pa.Commonwealth Ct. 396, 579 A.2d 996 (1990).[7] Unless a claimant can offer a convincing reason for failing to raise the claim before the Board, the commingling issue is waived. *Dowler.* Here, Christiana has not offered any explanation for failing to raise this issue below.

Accordingly, the order of the Board is affirmed.

### ORDER

NOW, this 28th day of July, 1994, the order of the Public School Employes' Retirement Board, dated June 24, 1993, is hereby affirmed.

[7.] Pennsylvania Rule of Appellate Procedure 1551 states, in part, that: [n]o question shall be heard or considered by the court which was not raised before the government unit except (1) Questions involving the validity of a statute ... (3) Questions which the court is satisfied that the petitioner could not by the exercise of due diligence have raised before the government unit.