Henry R. HOERNER, Jr., Petitioner,

v.

PUBLIC SCHOOL EMPLOYES' RETIREMENT BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1994.

Decided Feb. 16, 1995.

Reargument Denied April 5, 1995.

---

Richard C. Snelbaker, for petitioner.

Kathleen E. Boyle, for respondent.

Before SMITH and NEWMAN, JJ., and LORD, Senior Judge.

NEWMAN, Judge.

Henry R. Hoerner, Jr. (Claimant) appeals from an order of the Public School Employes' Retirement Board (Board), which denied his request that his retirement benefits be recalculated using a final average salary of $70,473.00 and an effective date of retirement of July 1, 1988. We reverse and remand.

### FACTUAL AND PROCEDURAL HISTORY

The Board made extensive findings of fact. A summary of those findings relevant to the present appeal is as follows:

#### I. Employment with Lower Dauphin School District

Claimant enrolled in the Public School Employes' Retirement System (PSERS) on July 1, 1966, as a result of his employment as superintendent for the Lower Dauphin School District (Lower Dauphin). Claimant served as superintendent for Lower Dauphin from that date through June 30, 1985.

On September 17, 1984, Claimant and Lower Dauphin entered into an agreement providing for the termination of Claimant's services (the Lower Dauphin Termination Agreement). The stated purpose of the termination agreement was to settle litigation then pending in the Commonwealth Court over which of two prior contracts governed Claimant's employment. The agreement further indicated that differences in educational philosophy were a reason for the termination.

The termination agreement also set forth terminating conditions in complete satisfaction of both parties' rights and obligations arising from their previous relationship. Among them, Claimant agreed to take a sabbatical leave from December 1, 1984 through November 30, 1985 and to resign from his position effective December 1, 1985. Lower Dauphin agreed to pay Claimant a salary for the period July 1, 1984 through September 16, 1984 (78 days) based upon an annual rate of $57,450. For the period, September 17, 1984, through November 30, 1984 (75 days), Claimant was to receive a salary based upon an annual rate of $75,000. Lower Dauphin agreed to pay Claimant $37,500, representing one-half of a prorated salary of $75,000, during his sabbatical from December 1, 1984, through November 30, 1985. Claimant also was to receive a lump-sum payment of $51,985.20 on January 7, 1985.

For the 1984–85 school year, Lower Dauphin reported to PSERS that Claimant was paid $72,391.88. That amount represented a thirty-one percent increase over Claimant's reported compensation of $55,199.84 for the 1983–84 school year.[1]

Claimant did not complete his sabbatical leave. On April 18, 1985, he entered into an employment contract with the Coatesville Area School District (Coatesville).

#### II. Employment with Coatesville Area School District

On July 1, 1985, Claimant assumed his new duties as district superintendent for Coatesville. Claimant served in that capacity until January 6, 1988.

Claimant's employment with Coatesville ended pursuant to a termination agreement,

---

1. The highest percentage increase in compensation that Claimant previously had received from Lower Dauphin was 9.3%. This increase took place during the 1980–81 school year.

dated October 22, 1987 (the Coatesville Termination Agreement). The stated purpose of the agreement was to settle differences in the parties' interpretation of the April 18, 1985 employment contract. In addition, the termination agreement was to release Claimant from all duties and obligations under the prior contract and to provide for a full settlement of Coatesville's financial obligations.

Pursuant to the termination agreement, Coatesville agreed to release Claimant on January 6, 1988 from all duties and obligations related to his position. As of January 6, 1988, Claimant agreed to remove himself from school district property and to return all keys to Coatesville. Claimant further agreed to resign effective June 30, 1988.

In recognition of the salary obligations set forth in the April 18, 1985 employment contract, Coatesville agreed to pay Claimant an annual salary of $75,000 for the 1987–88 school year. On November 9, 1987, Claimant was to receive a lump-sum payment of $24,-046.26, representing payment for accumulated sick days, personal days and payments to PSERS for the purchase of retirement benefits. Also, Coatesville agreed to pay Claimant a lump-sum payment of $58,398 on January 5, 1988, the day before the district released him from his duties. After January 5, 1988, Claimant performed only *de minimis* consultative services for Coatesville.

For the 1987–88 school year, Coatesville reported to PSERS that Claimant's salary was $75,000.12. That amount represented a 15.46% increase over Claimant's 1986–87 school year salary of $62,819.90.

On May 26, 1988, PSERS received Claimant's application for retirement benefits. The application indicated that Claimant's last day of service at Coatesville was June 30, 1988. Thus, PSERS initially established Claimant's effective date of retirement as July 1, 1988. In addition, PSERS determined Claimant's final average salary to be $70,473.

By letter dated August 23, 1988, however, PSERS informed Coatesville and Claimant that PSERS would not allow the 15.46% increase in Claimant's 1987–88 school year salary to be used in calculating Claimant's final average salary. By letter mailed August 23, 1988, PSERS informed Claimant that his retirement benefits had been calculated using a final average salary of $67,597 and 35.67 years of credited service. After further review, PSERS, by letter dated March 29, 1989, again informed Claimant that the increase in salary effected by the Coatesville Termination Agreement would not be used in calculating Claimant's retirement benefits.[2]

By letter dated September 28, 1989, PSERS notified Claimant that his retirement benefits would be adjusted using a corrected final average salary of $62,358. The reduction resulted from PSERS' disallowance of the increase in Claimant's payments for the 1984–85 school year, which increase was a result of the Lower Dauphin Termination Agreement.[3]

In the same letter, PSERS notified Claimant that his total years of credited service had been corrected from 35.67 years to 35.42 years. PSERS explained that the reduction in years of service resulted from its determination that Claimant's service at Coatesville ended on January 5, 1988, not June 30, 1988.[4] According to PSERS, Claimant ceased being a Coatesville employee the date he was relieved of his duties and was required to remove himself from school property.

Because of these corrections, Claimant's retirement benefit ultimately was calculated using a final average salary of $62,358 and 35.42 years of credited service. Claimant appealed PSERS's determinations, and there was a hearing held before a hearing examin-

2. Specifically, PSERS determined that a percentage of the increase in Claimant's salary constituted a severance payment and thus was not compensation for purposes of determining final average salary.

3. PSERS reduced Claimant's compensation for final average salary purposes for the 1984–85 school year from $72,391.88 to $56,949.88. PSERS determined that the 31% increase in his salary constituted a severance payment and thus was not compensation for purposes of determining final average salary.

4. As such, PSERS reduced Claimant's compensation for final average salary purposes for the 1987–88 school year from $75,000.12 to $37,-950.20.

er on September 15, 1992. In an opinion, dated April 1, 1993, the hearing examiner recommended that the Board deny Claimant's request that PSERS's corrections to his final average salary and years of credited service be reversed. Claimant filed exceptions to the hearing examiner's opinion, to which PSERS submitted a responsive brief.

Upon consideration of the evidence presented, the Board upheld PSERS's determination that a large percentage of Claimant's increases in salary during the school years, 1984–85 and 1987–88, constituted severance payments and, thus, were not compensation for purposes of computing final average salary. The Board also upheld PSERS' determination that Claimant's effective date of retirement was January 6, 1988, not July 1, 1988. This appeal followed.

### ISSUES

■ On appeal to this court, the issues before us are (1) whether the Board erred in determining that the 31% and 15.46% increases in Claimant's salary during the school years, 1984–85 and 1987–88, respectively, constituted "severance payments" and, thus, were not "compensation" for purposes of computing "final average salary;" (2) whether the Board erred in determining that Claimant's last day of school service was January 5, 1988, not June 30, 1988; and (3) whether PSERS violated Claimant's due process rights by its alleged, unexplained bureaucratic delay and lack of cooperation in his attempt to seek a determination of his pension rights.[5]

### DISCUSSION

#### I. Severance Payments

As a preliminary matter, we note that PSERS pays retirement benefits to an annuitant based on a "standard single life annuity," which is defined by Section 8102 of the Public School Employees' Retirement Code (Retirement Code), 24 Pa.C.S. § 8102, as an "annuity equal to 2% of the final average salary, multiplied by the total number of years and fractional part of a year of credited service of a member." This section also defines "final average salary," in relevant part, as the "highest average compensation received as an active member during any three nonoverlapping periods of 12 consecutive months."

■ Both the Retirement Code and regulations promulgated thereunder contain restrictions on the types of compensation that may be used in calculating final average salary. The purpose of these restrictions, as recognized by this court, is to ensure the actuarial soundness of the retirement fund by preventing employees from artificially inflating compensation as a means to receive greater retirement benefits. *See e.g., Christiana v. Public School Employes' Retirement Board,* 166 Pa.Commonwealth Ct. 300, 646 A.2d 645, *petition for allowance of appeal and/or cross-petition granted,* —— Pa. ——, 652 A.2d 840 (1994); *Laurito v. Public School Employes' Retirement Board,* 146 Pa.Commonwealth Ct. 514, 606 A.2d 609 (1992). Exaggerated or artificially created enhancements to an employee's annual compensation cannot be anticipated and make predictions of future, aggregate benefit payouts less reliable.

In recognition of these actuarial principles, Section 8102 of the Retirement Code excludes from the definition of compensation "refunds for expenses incidental to employment" and "any severance payments." 24 Pa.C.S. § 8102.[6] This section further defines "severance payments" as:

---

5. This court's scope of review of the Board's adjudication is limited to determining whether the Board committed an error of law, whether constitutional rights were violated, or whether necessary factual findings are supported by substantial evidence. *Finnegan v. Public School Employes' Retirement Board,* 126 Pa.Commonwealth Ct. 584, 560 A.2d 848 (1989), *aff'd,* 527 Pa. 362, 591 A.2d 1053 (1991).

6. 22 Pa.Code § 211.2 similarly excludes from the definition of compensation:

any bonus, severance payment or any other remuneration or similar emoluments received by a school employe during his school service not based on the standard salary schedule for which he is rendering service.

It also excludes:

payments for unused sick leave, unused vacation leave, bonuses for attending school seminars and conventions, special payments

Any payments for unused vacation or sick leave and *any additional compensation contingent upon retirement* including payments in excess of the scheduled or customary salaries provided for members within the same governmental entity with the same educational and experience qualifications who are not terminating service. (Emphasis added.)

■ With regard to the present appeal, Claimant asserts that the Board erred in concluding that the 31% and 15.46% increases in his salary during the school years, 1984–85 and 1987–88, respectively, constituted severance payments. A determination of whether a payment is compensation or a severance payment is a question of law fully reviewable by this court. *Dowler v. Public School Employes' Retirement Board*, 153 Pa.Commonwealth Ct. 109, 620 A.2d 639 (1993).

■ Specifically, Claimant indicates that both termination agreements clearly designate certain payments as representing Claimant's accumulated sick leave, unused vacation time and other severance-type payments. Claimant also emphasizes that both agreements designate certain payments as salary. Therefore, according to Claimant, the Board erroneously determined that a percentage of his salaries included additional compensation contingent upon the termination of his employment. We agree.

Our review of the Lower Dauphin Termination Agreement reveals that it provides, in relevant part, as follows:

2. On or before September 27, 1984, the School District shall pay to Dr. Hoerner the sum of $31,367.31, *representing payment for* 336.25 days of *unused sick leave* to December 1, 1984, at $90.00 per day and five days of *unused vacation* at $220.96 ... per day.

3. In lieu of all other contractual obligations heretofore existing between the parties, Dr. Hoerner's *salary for the period from July 1, 1984, to November 30, 1985,* shall be as follows:

for health and welfare plans based on the hours employed or any other payment or similar emoluments which may be negotiat-

a. From July 1, 1984, to September 16, 1984, 78 days at $157.40 per day (prorated annual salary of $57,450) a total salary of $12,253.80.

b. From September 17, 1984, to November 30, 1984, 75 days at $205.45 per day (prorated annual salary of $75,000) a total gross salary of $15,411.00.

c. From December 1, 1984, to November 30, 1985, total gross salary payment of $37,500 being one-half of an annual salary of $75,000, in consideration of the sabbatical leave hereinafter granted.

4. *In consideration of (a) the termination of all contractual rights not granted hereunder, and (b) the termination with prejudice of all litigation pending between the parties, the School District agrees to pay to Dr. Hoerner and he agrees to accept the lump-sum of $51,-985.20 payable January 7, 1985, which sum shall be in addition to the salary payments required under paragraph 3 above.*

Reproduced Record at 241a–242a (emphasis added).

Regarding the Coatesville Termination Agreement, we note that it similarly provides:

3. *In recognition of the salary obligations contained in the [April 18, 1985 agreement],* the School District agrees to pay Dr. Hoerner the sum of $133,398.00 for the calendar period of July 1, 1987, through June 30, 1989. Payment shall be made as follows:

A. In twenty-six (26) equal payments during the school fiscal year of July 1, 1987, through June 30, 1988, *a salary sum* of Seventy-five Thousand ($75,-000.00) Dollars, salary to be adjusted immediately.

B. On January 5, 1988, *a lump sum* payment of Fifty-eight Thousand Three Hundred Ninety-eight ($58,398.00) Dollars....

4. *In recognition of the benefit obligations contained in the [April 18, 1985*

ed in a collective bargaining agreement for the express purpose of enhancing the compensation factor for retirement benefits.

*agreement]*, the School District agrees to pay Dr. Hoerner the sum of Twenty-four Thousand Forty-six Dollars and Twenty-six Cents ($24,046.26) [*representing payment for unused sick days, personal days and vacation days and payments for the outstanding purchase of retirement benefits* ].

Reproduced Record at 294a. (emphasis added).

Based upon our review of the record, it is clear that the salary provisions of both the Lower Dauphin Termination Agreement and the Coatesville Termination Agreement were separately and specifically stated, and neither was contingent upon retirement or resignation. Moreover, we note that in both termination agreements, any payments that constituted severance payments were separately identified and excluded from salary. *See* ¶ 2 and ¶ 4 of Lower Dauphin Termination Agreement; ¶ 3.B. and ¶ 4 of Coatesville Termination Agreement.

We find no basis for the Board's conclusion that a percentage of Claimant's salaries included severance payments. Also, this court is mindful that the Board must liberally administer the retirement system in favor of its members. *Dowler.* As such, we conclude that the Board erred as a matter of law in determining that the 31% and 15.46% increases in Claimant's salary during the school years, 1984–85 and 1987–88, respectively, did not constitute compensation for purposes of calculating final average salary.

## II. *Claimant's Last Day of School Service*

In computing a member's credited school service for a determination of his benefits, Section 8302(a) of the Retirement Code provides, in pertinent part, that "a full-time salaried school employee shall receive one year of credit for each school year or the corresponding fraction thereof." 24 Pa.C.S. § 8302(a). The Retirement Code defines school service as "[s]ervice rendered as a school employee." 24 Pa.C.S. § 8102. The Retirement Code further defines a school employee as "[a]ny person engaged in work relating to a public school for any governmental agency and for which work he is

receiving regular remuneration as an officer, administrator or employee...." *Id.*

■ On appeal to this court, Claimant asserts that the Board erred in concluding that he was not entitled to credit for service from January 6, 1988 through June 30, 1988. Specifically, Claimant argues that he was an employee of Coatesville until June 30, 1988, the effective date of his resignation. We agree.

Although Claimant was relieved of his duties as of January 6, 1988, he remained Coatesville's superintendent until the effective date of his resignation. Sections 1001 through 1083.1 of the Public School Code of 1949 [7] provide for the retention of a district superintendent, or acting or substitute superintendent, at all times. Through June 30, 1988, Coatesville recognized Claimant in that capacity.

In addition, paragraph 3.A. of the Coatesville Termination Agreement specifically provided for the payment of a salary to Claimant through June 30, 1988. The agreement further directed Coatesville to reimburse Claimant for his expenses to attend an American Association of School Administrator's convention in February 1988. ¶ 6. Most notably, the agreement prohibited Claimant from accepting an administrative position with any school district until the effective date of his resignation, namely, June 30, 1988. ¶ 16.

Last, we note that although the Board found that Claimant performed only *de minimis* consultative services for Coatesville after January 5, 1988, he nonetheless remained available to provide advisory services to the district until June 30, 1988. We therefore conclude that the Board erred in determining that Claimant's last day of school service was January 5, 1988.

## III. *Claimant's Due Process Rights*

■ With regard to the third issue, Claimant maintains that PSERS violated his right to due process by its unexplained, bureaucratic delay and lack of cooperation in his attempt to seek a determination of his

---

**7.** Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 10–1001 through 10–1083.1.

pension rights.[8] Specifically, Claimant cites PSERS's failure to hold a "pre-reduction" hearing, its repeated delays in holding a hearing before the Board and its failure to provide an explanation of its rationale until more than four years after his application for retirement benefits. Claimant, therefore, requests this court to order PSERS to pay his costs and expenses, including attorney's fees, in contesting its determination of his claim.

Our review of the record reveals, however, that Claimant's constitutional rights were fully protected by the procedures utilized by PSERS. First, we note that Claimant failed to cite any authority for the proposition that he was entitled to a "pre-reduction" hearing in this case. Second, Claimant failed to acknowledge that in reviewing his account, PSERS often was dependent upon information from Lower Dauphin and Coatesville, both of which were sometimes slow to respond. Last, Claimant failed to establish that he was prejudiced in any way by the delays in processing his claim.

Therefore, we conclude that Claimant's argument that his rights to due process were violated must fail. We similarly conclude that Claimant did not demonstrate that PSERS's conduct was "dilatory, obdurate or vexatious" to warrant an award of counsel fees pursuant to Section 2503 of the Judicial Code, 42 Pa.C.S. § 2503.

Accordingly, we reverse the Board's order and remand this matter to it with instructions to remand to PSERS for a recalculation of Claimant's benefits using a final average salary of $70,473.00 and an effective retirement date of July 1, 1988. We deny Claimant's request for counsel fees.

### ORDER

AND NOW, February 16, 1995, we reverse the order of the Public School Employes' Retirement Board and remand this matter to the Board with instructions to remand to the Public School Employes' Retirement System for a recalculation of Henry R. Hoerner, Jr.'s benefits using a final average salary of $70,-

473.00 and an effective retirement date of July 1, 1988.

We relinquish jurisdiction.

---

8. Contrary to the Board's assertion, we do not believe that Claimant failed to preserve this issue for appeal. Our review of Claimant's exceptions to the hearing examiner's proposed report indi- cates that he sufficiently raised the issue. Therefore, this issue should not be deemed to have been waived under 1 Pa.Code § 35.213.