Dr. Vernon R. **WYLAND**, Petitioner,

v.

## PUBLIC SCHOOL EMPLOYES' RETIREMENT BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 17, 1995.
Decided Jan. 8, 1996.

Dee Lafferty Pugh, for petitioner.

Louis J. Sheehan, Assistant Counsel, for respondent.

Before PELLEGRINI and KELLEY, JJ., and KELTON, Senior Judge.

KELLEY, Judge.

Dr. Vernon R. Wyland, the former Superintendent of the Garnet Valley School District (school district) appeals from the order of the Public School Employes' Retirement Board (board) adopting a hearing examiner's calculation of his final average salary used to determine his retirement benefits under the Public School Employees' Retirement Code (Retirement Code).[1] We affirm.

The relevant facts as found by the hearing examiner, and adopted by the board, may be summarized as follows. Wyland became a member of the Public School Employes' Retirement System (PSERS) by virtue of his employment with the Shaler Area School District on June 1, 1983. On July 1, 1987, he began service with the Garnet Valley School District as the District Superintendent for the 1987–1988 school year, at an annual salary of $65,000. On December 16, 1988, his annual salary for the 1988–1989 school year was increased to $70,200, retroactive to July 1, 1988. On March 28, 1990, Wyland's annual salary for the 1989–1990 school year was increased to $74,412, retroactive to July 1, 1989. Wyland's annual salary for the 1990–1991 school year was increased to $94,481 as of June 30, 1991.

During the 1989–1990 school year, the school district experienced a prolonged labor action with intense teacher contract negotiations which continued until a new contract was signed in June of 1990. During the labor action, the teachers went out on strike for a period of 25 to 30 days. As a result of the contract negotiations and work stoppage, Wyland became the target of community pressures and antagonisms and he also became the subject of a vote of "no confidence" from the teachers.

During the same period, the school district was engaged in a building program involving the construction of a new middle school building and other renovations. At that time, the Garnet Valley Board of School Directors (school board) was sensitive to the adverse public reaction to cost overruns associated with the building program. The teachers' contract negotiations and public reaction to the work stoppage contributed to a significant turnover in the composition of the school board. Six school board members changed as a result of resignations, and new members who were appointed came to the school board predisposed against Wyland as a result of the labor situation and the cost overruns.

As a result, in November of 1990, Wyland was informed by the president of the school board that his contract would not be extended beyond its expiration date of June 30, 1991. Because the school board did not want to take public action on their decision, Wyland was asked if he would rather resign from his position. Wyland concluded that it would be best to resign as he felt it would be easier to tell prospective employers that he had resigned, rather than to say that his contract had not been extended.

After negotiations regarding the terms of Wyland's resignation, on November 21, 1990, the president of the school board sent him a letter outlining the terms under which he could resign. The letter stated, *inter alia:*

3) The [School] Board guarantees the payment to you of your full salary through June 30, 1991. That salary will not be reduced between now and June 30, 1991.

(a) Your annual raise, ordinarily effective January, 1991, will be deferred. As part of your salary, and in lieu of the annual raise in January, the [School] Board will purchase from you all unused vacation days credited to your account as of June 30, 1991....

(b) Additionally, at the conclusion of your contract on June 30, 1991, the [School] Board, as part of your annual raise, will pay you for all unused sick days then credited to your account....

(c) Notwithstanding Paragraphs 3(a) and 3(b), you have agreed to reimburse the District for its share of the retirement cost allocable to the inclusion of that portion of your salary

1. 24 Pa.C.S. §§ 8101–8534.

represented by payments under Paragraph 3(a) and 3(b).

Wyland accepted the proposed terms as outlined in the letter.

On November 26, 1990, Wyland submitted his letter of resignation, contingent upon the school board's acceptance of the proposed terms in the president's letter. At its regular meeting on November 27, 1990, the school board accepted Wyland's resignation effective June 30, 1991. The school board did not take a public vote regarding the content and financial terms of the November 21, 1990 letter to avoid disclosure of their action.

By letter dated June 20, 1991, Wyland submitted a memorandum to the school district's director of business and support services which summarized his accumulated vacation days and sick days. On June 25, 1991, Wyland and the school board president signed a letter of agreement which contained identical terms as outlined in the letter of November 21, 1990.

On June 28, 1991, the school district issued Wyland a check in the amount of $20,069.40 as payment for his unused sick days, vacation days and comp days. The payroll document computing Wyland's vacation and sick days noted that the payment was to be considered compensation as per the November 21, 1990 letter of agreement. As required by the letter of agreement, Wyland reimbursed the school district for its share of the retirement costs allocable to the inclusion of the $20,069.40 payment.

On June 28th, Wyland also entered into an agreement with the school district releasing the school district from any future liability concerning his resignation, in exchange for the payment of $20,069.40. The agreement referred to this payment as a "severance payment". Wyland was required to sign the release agreement in order to receive the $20,069.40 payment. He signed the release agreement and received the payment.

On September 17, 1991, PSERS received a retirement application from Wyland with an effective date of retirement of June 29, 1991. PSERS contacted the school district regarding the $20,069.40 payment to Wyland. The school district sent PSERS a copy of the minutes of the school board meeting in which Wyland formally submitted his resignation, and indicated that no information from his personnel file could be released without his written consent. PSERS then informed the school district that in the absence of any written evidence concerning the reason for the payment, the $20,069.40 would not be used to calculate Wyland's retirement benefits. Wyland was sent copies of both letters from PSERS, but his consent for the release of information from his personnel file was never requested by PSERS.

Initially, Wyland's retirement benefits were calculated by PSERS using a "final average salary" of $79,698. However, without the necessary documentation, the $20,069.40 was removed from PSERS' computation of his final average salary. As a result, his retirement benefits were recalculated using a final average salary of $73,008. By letter dated April 8, 1992, PSERS informed Wyland that his benefits had been recomputed, and that he was required to repay $7,619.03 that he had received in overpayment.

By letter dated April 23, 1992, Wyland requested that PSERS include the $20,069.40 in its calculation of his final average salary. On July 1, 1992, PSERS notified Wyland that its Appeals Committee had denied his request. By letter dated July 28, 1992, Wyland requested an administrative hearing.

On July 6, 1993, a hearing was scheduled and held before an independent hearing examiner. Based on the evidence presented at the hearing and the briefs and motions submitted by the parties, the hearing examiner concluded that the $20,069.40 paid to Wyland was a severance payment, and should not be considered in the calculation of his final average salary. In this regard, the hearing examiner specifically found the following:

1. At the time of the November 21, 1990 agreement, [the school district] was under a great deal of political pressure due to the recent teacher strike and cost overruns at the middle school project and [Wyland]'s raise was motivated by [the school district]'s need for [Wyland]'s cooperation.

2. The November 21, 1990 agreement was designed as a buyout of [Wyland]'s

vacation and sick days, both items regularly purchased by [the school district] at the end of a superintendent's term, and both items that would not normally be considered standard salary.

3. Both [Wyland] and [the school district] represented to the general public that [Wyland]'s pay for the 1990–1991 school year was $74,412.00, and it would be unfair to now allow [Wyland] to claim a higher pay for retirement purposes.

4. The November 21, 1990, agreement required [Wyland] to reimburse [the school district] for its share of the retirement cost allocable to the inclusion of the $20,069.40 payment into [Wyland]'s salary. With a regular salary increase this retirement cost would have been the responsibility of [the school district].

5. [Wyland] was required to sign the June 28, 1991, release agreement in order to receive the $20,069.40 payment and the release agreement referred to the money as a severance payment.

The hearing examiner also found, *inter alia,* that: the payment was not based on the standard salary schedule for which Wyland was rendering service; the payment was not made under the school district's scheduled or customary salary scale; and, the payment was made contingent upon Wyland's "retirement" as that term includes terminations which result in the immediate receipt of a pension.

Both Wyland and PSERS filed exceptions to the hearing examiner's decision with the board. The board adopted the hearing examiner's findings of fact and conclusions of law, and affirmed the hearing examiner's decision. Wyland then filed a petition for review in this court appeal.

On appeal, Wyland claims: (1) the board erred in determining that the $20,069.40 payment in his final year of employment constituted severance pay rather than compensation, thereby reducing his final average salary used for the calculation of his retirement benefits; and (2) his due process rights were denied by PSERS' failure to request information from him before eliminating the $20,069.40 from its calculation of his final average salary, and by the commingling of the prosecutorial and adjudicative functions of PSERS and the board.

We note that our scope of review from adjudications of administrative boards is limited to a determination of whether the board committed an error of law, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Christiana v. Public School Employees' Retirement Board,* 166 Pa.Cmwlth. 300, 646 A.2d 645 (1994); *Dowler v. Public School Employees' Retirement Board,* 153 Pa.Cmwlth. 109, 620 A.2d 639 (1993). Because the board is charged with the execution and application of the Retirement Code, the board's interpretation should not be overturned unless it is clear that its construction of the Retirement Code is erroneous. *Christiana.*

Wyland first argues that the board erred in determining that the $20,069.40 payment in his final year of employment constituted a severance payment rather than compensation. In particular, Wyland claims that: there is no evidence that the increase was paid contingent upon his retirement; there is no substantial evidence that it was payment for his unused vacation or sick time; his resignation at the end of his contract term cannot be considered to be his "retirement"; the increase was consistent with the school district's compensation plan; and it made his salary comparable to other superintendents in Delaware County.

Both the Retirement Code and the applicable regulations contain restrictions on the types of compensation that may be used in calculating an employee's final average salary. *Hoerner v. Public School Employees' Retirement Board,* 655 A.2d 207 (Pa.Cmwlth. 1995). The purpose of these restrictions is to ensure the actuarial soundness of the retirement fund by preventing employees from artificially inflating compensation as a means of receiving greater retirement benefits. *Id.*

Section 8102 of the Retirement Code sets forth the following relevant definitions:

"**Compensation.**" Pickup contributions plus any remuneration received as a school employee excluding refunds for expenses

incidental to employment and **excluding any severance payments.**

"**Final average salary.**" The highest average compensation received as an active member during any three nonoverlapping periods of 12 consecutive months....

"**Pickup contributions.**" Regular or joint coverage member contributions which are made by the employer for active members for current service on and after January 1, 1983.

"**Severance payments.**" **Any payments for unused vacation or sick leave and any additional compensation contingent upon retirement** including payments in excess of the scheduled or customary salaries provided for members within the same governmental entity with the same educational and experience qualifications who are not terminating service.

24 Pa.C.S. § 8102 (emphasis added).

Title 22 Pa.Code § 211.2 also defines compensation as follows:

**Compensation—Excludes a bonus, severance payment or other remuneration or similar emoluments received by a school employe during his school service not based on the standard salary schedule for which he is rendering service. It shall exclude payments for unused sick leave, unused vacation leave,** bonuses for attending school seminars and conventions, special payments for health and welfare plans based on the hours employed or any other payment or similar emoluments which may be negotiated in a collective bargaining agreement for the express purpose of enhancing the compensation factor for retirement benefits. (Emphasis added.)

 Whether or not a payment must be considered a severance payment is a question of law. *Dowler.* Under the Retirement Code, all payments, other than those for regular professional salary, which are part of an agreement in which a professional member agrees to terminate school service by a date certain, are *prima facie* severance payments. *Id.* A claimant may rebut a *prima facie* case only by showing that the payment is in accord with the scheduled or customary salary scale within the school district for

personnel with the same educational and experience qualifications who are not terminating service. *Id.*

In this case, both the hearing examiner and the board were presented with the letters of agreement between Wyland and the school board president dated November 21, 1990 and June 25, 1991 which stated, *inter alia,* that Wyland would be paid for all of his unused vacation and sick days in lieu of his annual raise, and that he would reimburse the school district for its share of the retirement cost allocable to the inclusion of this amount. The hearing examiner and the board were also presented with an agreement between Wyland and the school board president dated June 28, 1991 which stated that the parties had reached certain agreements concerning the termination of his employment and severance payments, the terms of which were embodied in the letter of June 25. The hearing examiner and the board were also presented with documentation that Wyland was paid $20,069.40 by the school district for 62 unused vacation and comp days, and 93 unused sick days. Clearly, such evidence is sufficient to support the board's conclusion that the $20,069.40 paid to Wyland constituted a severance payment as it is defined in the Retirement Code.

 Wyland is essentially asking this court to reweigh the conflicting evidence presented to the hearing examiner and the board, and to only accept that evidence which contradicts the plain meaning of the contents of the foregoing documents. However, questions of resolving conflicts in the evidence, witness credibility, and evidentiary weight are properly within the exclusive discretion of the fact finding agency, and are not usually matters for a reviewing court. *Herzog v. Department of Environmental Resources,* 166 Pa.Cmwlth. 114, 645 A.2d 1381 (1994). Moreover, "this court 'may not substitute its judgment for that of an administrative agency acting within its discretion in the field of its expertise upon substantial evidence....'" *Dowler,* 620 A.2d at 644 (citation omitted). The hearing examiner and the board rejected Wyland's claims regarding this evidence. On

appeal, we will not substitute our judgment nor reweigh this evidence.

■ Wyland next claims that his right to due process and fundamental fairness was denied by PSERS' failure to formally request information from him before eliminating the $20,069.40 from its calculation of his final average salary, and by the commingling of prosecutorial and adjudicative functions by PSERS and the board. He first argues that his vested property rights to his pension were reduced by PSERS in an arbitrary manner, without notice and without a chance to respond, thereby violating his due process rights.

The Administrative Agency Law, 2 Pa.C.S. § 504, states that "[n]o adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice and an opportunity to be heard." Wyland was afforded these opportunities and exercised them before the hearing examiner and the board in this case.

As the claimant in *Hoerner*, we note that Wyland has failed to cite any authority for the proposition that he was entitled to a "pre-reduction" hearing before PSERS in this case. The determination of Wyland's final average salary and the calculation of benefits is simply the result of a staff function performed by PSERS.

Wyland could, and did, appeal the initial determination of his retirement benefits to PSERS' appeal committee and, ultimately, to the board. He filed a brief and a reply brief prior to the hearing before the hearing examiner, attended the hearing and presented evidence, and filed exceptions to the hearing examiner's determination with the board. As Wyland was given notice and a hearing prior to the final determination of his retirement benefits, and there exists no authority for a hearing in connection with PSERS' initial review, this claim is meritless. *See Stone & Edwards Insurance Agency, Inc. v. Department of Insurance*, 538 Pa. 276, 648 A.2d 304 (1994) (The initial denial of an insurance license application was the result of a staff function performed by the Pennsylvania Insurance Department; as this decision could be appealed to the Insurance Commissioner who would conduct a hearing before the final determination, applicants were not entitled to notice and a hearing prior to the initial denial of a license application).

■ Finally, Wyland argues that the commingling of the prosecutorial and adjudicative functions by PSERS and the board is violative of his due process rights. In support of his position, Wyland relies on the case of *Lyness v. State Board of Medicine*, 529 Pa. 535, 605 A.2d 1204 (1994). In *Lyness*, our Supreme Court stated:

[I]n the modern world of sprawling governmental entities akin to corporations it would be both unrealistic and counterproductive to insist that administrative agencies be forbidden from handling both prosecutorial and adjudicatory functions, where such roles are parcelled out and divided among distinct departments or boards. Efficiency and cost-effectiveness are certainly desirable ends. Indeed, each administrative board and judge is ultimately a subdivision of a single entity, the Commonwealth of Pennsylvania, but this does not render their collective work as prosecutors, investigators and adjudicators constitutionally infirm, nor create an imminent threat of prejudice.

What our Constitution requires, however, is that if more than one function is reposed in a single administrative entity, walls of division be constructed which eliminate the threat or appearance of bias.... [A] "mere tangential involvement" of an adjudicator in the decision to initiate proceeding is not enough to raise the red flag of procedural due process.... Our constitutional notion of due process does not require a *tabula rasa*.... However, where the very entity or individuals involved in the decision to prosecute are "significantly involved" in the adjudicatory phase of the proceedings, a violation of due process occurs.

*Lyness*, 529 Pa. at 546–47, 605 A.2d at 1209–10 (citations omitted).

■ Thus, where "walls of division" are erected between the parties completing disparate functions within an administrative agency, no due process violation will be found. *See, e.g., Stone & Edwards Insur-*

ance; *Office of Disciplinary Counsel v. Duffield*, 537 Pa. 485, 644 A.2d 1186 (1994).

Even if we were to adopt Wyland's position that the initial determination and review of his retirement benefits by PSERS and the board constitute "prosecutorial" and "adjudicative" functions, there has been no showing by Wyland of a commingling of these functions as proscribed by *Lyness*. Wyland's initial application was reviewed by a supervisor in the retirement processing section of PSERS. When he was dissatisfied with the determination of his benefits, Wyland requested PSERS' appeals committee to review his claim. When he was dissatisfied with the appeals committee's decision, Wyland submitted a request to the legal division of PSERS for a hearing before a hearing examiner. The independent hearing examiner conducted the hearing and made a recommendation to the board, which was the final arbiter. The board was not involved in the adjudication until Wyland appealed the decision of the hearing examiner to the board. Such a procedure does not involve the commingling of prosecutorial and adjudicative functions, and does not violate due process. *See Duffield.*

Unquestionably, under *Lyness*, the mere possibility of bias under Pennsylvania law is sufficient to "raise the red flag" of the protections offered by the procedural guaranty of due process. *Stone & Edwards Insurance.* However, the appearance of bias proscribed by *Lyness* must be one which arises from an *actual* environment of commingled functions. *Id.* Wyland has not advanced a claim of the actual commingling of functions in the manner in which PSERS and the board conduct their investigations, prosecutions and adjudications. In the absence of any actual commingling, which would give rise to an appearance of bias, Wyland's unsubstantiated claim of commingling is meritless. *Id.*

Accordingly, the order of the board is affirmed.

### ORDER

NOW, this 8th day of January, 1996, the order of the Public School Employees' Re-

tirement Board, dated January 27, 1995, at No. 480–24–6298, is affirmed.

**P.J.S., Petitioner,**