Dr. Dorothy June HAIRSTON–
BROWN, Petitioner

v.

## PUBLIC SCHOOL EMPLOYEES'
## RETIREMENT BOARD,
Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2013.
Decided Oct. 18, 2013.

---

Amanda J. Sundquist, West Chester, for petitioner.

Jennifer A. Mills, Harrisburg, for respondent.

BEFORE: PELLEGRINI, President Judge, and COVEY, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge COVEY.

Dr. Dorothy June Hairston–Brown (Claimant) petitions this Court for review of the Public School Employees' Retirement Board's (Board) December 11, 2012 order denying Claimant's request to credit her with one year of credited service for each of the 2004–2005 through and including 2007–2008 academic years. Claimant presents five issues for this Court's review: (1) whether the Board abused its discretion and erred as a matter of law by failing to adopt the parties' Stipulations of Fact (Stipulations) and, on the basis of such Stipulations, to give Claimant one year of credited service for each of the years in question; (2) whether the Board's conclusion that Claimant was not entitled to receive credited service for the 2004–2005 through and including the 2007–2008 school years for her employment with the Laboratory Charter School of Communication and Language (Laboratory) and Ad Prima Charter School (Ad Prima) was not supported by substantial evidence and an error of law; (3) whether the Board erred as a matter of law in concluding Claimant, rather than the employers, had a duty to account for the hours worked at Laboratory and Ad Prima in order to receive the correct amount of credited service for each employer; (4) whether Claimant's procedural and substantive due process rights were violated by the Public School Employees' Retirement System's (PSERS) Retirement Benefits Specialist Supervisor and the Board's Executive Staff Review Committee (ESRC) when they impermissibly commingled prosecutorial and adjudicatory functions with regard to the October 14, 2009 and February 18, 2011 determinations; and, (5) whether Claimant's procedural and substantive due process rights were violated by the Board's reversal of Claimant's initial determination of her retirement benefits which resulted in a reduction of Claimant's years of service, final average salary and monthly retirement benefits without prior notice and/or hearing.

Claimant was first enrolled in the PSERS in September 1967, by virtue of her employment with the Philadelphia School District (PSD). In 1983, Claimant founded Main Line Academy (Main Line), a Pennsylvania private academic school. Claimant was and continues to be Main Line's President and Executive Director. Following her employment termination from PSD on June 29, 1993, Claimant retired from PSERS with an effective retirement date of July 1, 1993, based on $43,490.00 as a final average salary and 27.87 years of credited service.

In October 1997, Claimant incorporated Laboratory, a Philadelphia charter school, and became employed by Laboratory as its full-time salaried Chief Executive Officer. Laboratory reenrolled Claimant in PSERS effective June 1, 1998, by virtue of her Laboratory employment. In January

2003, Claimant incorporated Ad Prima, a Philadelphia charter school, and became employed by Ad Prima as its full-time salaried Chief Administrative Officer. Ad Prima reported Claimant to PSERS by virtue of her Ad Prima employment.

On March 21, 2005, Claimant incorporated the Agora Cyber Charter School (Agora), a cyber charter school for Pennsylvania residents, and it was granted a charter for a period commencing July 1, 2005. Agora enrolled its employees in PSERS, but did not open a contract record for Claimant, and never reported to PSERS any salary or service information for Claimant. On November 14, 2005, Claimant and Brien Gardiner established The Cynwyd Group (Cynwyd) with the Pennsylvania Department of State as a limited liability company. Claimant had an ownership interest in Cynwyd. On May 10, 2006, Cynwyd entered into a service agreement with Agora to provide supervision, direction and management of Agora. On June 4, 2007, Claimant incorporated the Planet Abacus Charter School (Planet Abacus), a Philadelphia charter school, and it was granted a charter for a period commencing July 1, 2007. Planet Abacus enrolled its employees in PSERS, but did not open a contract record for Claimant, and never reported to PSERS any salary or service information for Claimant. On June 25, 2007, AcademicQuest was established as a Pennsylvania limited liability company, with Claimant as its President. AcademicQuest entered into a service agreement with Planet Abacus dated March 16, 2007, to provide educational services to Planet Abacus beginning July 1, 2007.

On or about May 21, 2008, PSERS contacted Claimant regarding her simultaneous full-time employment for Laboratory and Ad Prima as reported by both school employers to PSERS. Claimant was asked to provide a daily work schedule for the two schools beginning with the 2004–2005 through and including the 2007–2008 school years. PSERS made this inquiry because it wanted to determine that credible service was justified and that there was no overlap in service between the entities. On or about May 27, 2008, Laboratory's Business Manager Anthony Smoot (Smoot) provided PSERS with copies of Claimant's job duties for both Laboratory and Ad Prima and, in the accompanying letter, provided a breakdown of Claimant's daily work schedule for both Laboratory and Ad Prima for the 2004–2005 through 2007–2008 school years. The May 27, 2008 letter set forth Claimant's weekly hours as follows: 27 hours for Laboratory on Monday, Tuesday and Friday, 7:00 a.m. to 12:00 p.m., Wednesday, Thursday, 12:30 p.m. to 4:00 p.m., and Saturday, 8:00 a.m. to 1:00 p.m.; and 26 hours for Ad Prima on Monday, Tuesday, 12:30 p.m. to 5:00 p.m., Friday, 12:30 p.m. to 4:00 p.m., and Saturday, 1:30 p.m. to 5:00 p.m., for a total of 53 hours per week between the two schools. At the time PSERS received the information, it accepted the May 27, 2008 letter as an accurate reflection of the hours Claimant worked at Laboratory and Ad Prima during the 2004–2005 through 2007–2008 school years.

Following Claimant's submission of a retirement application, she retired from PSERS, effective December 1, 2008. By letter dated April 23, 2009, PSERS notified Claimant of her initial retirement benefit based on a December 1, 2008 retirement date. The initial retirement letter stated that Claimant's benefit was calculated based on her option selection and the latest salaries and service on file with PSERS. The letter further informed Claimant that it was a preliminary benefit and may not match the amount shown on the estimate PSERS prepared. The initial retirement letter advised Claimant that her gross monthly benefit would be

$14,150.11, which benefit Claimant began receiving thereafter.

In late 2008 to early 2009, PSERS senior staff members asked PSERS Retirement Benefits Specialist Supervisor Troy Peechatka (Peechatka) to review concerns about Philadelphia charter school annuitants' returns to service and possible pension forfeiture issues as reported by articles in the *Philadelphia Inquirer*. Peechatka was directed to review all the names listed in the articles to determine if there were any PSERS annuitants. Claimant was named in the news articles. As part of his review, Peechatka reviewed information and documents from various sources, including PSERS' own records and records from the Department of Education's Office of Chief Counsel. Peechatka did not seek information directly from Claimant, Laboratory or Ad Prima. Based on Peechatka's review of Claimant's account and the information he received, he determined that, in addition to the full-time service Laboratory and Ad Prima reported for Claimant during the 2004–2005 through 2007–2008 school years, Claimant also performed services for Agora, Planet Abacus, Cynwyd, AcademicQuest and Main Line. Because the documents Peechatka reviewed conflicted with the information Laboratory and Ad Prima reported to PSERS regarding Claimant's service, Peechatka believed an adjustment had to be made to Claimant's account. As the adjustment to Claimant's account could be significant, pursuant to his normal course, Peechatka sought guidance from the PSERS Office of Chief Counsel and ESRC.

On October 14, 2009, Peechatka prepared a Determination (October 14, 2009 Determination) stating that PSERS was in receipt of documents reflecting that Claimant had worked either as an employee or independent contractor for a number of other entities while she was reported as a full-time administrator for both Laboratory and Ad Prima. The October 14, 2009 Determination reduced Claimant's monthly PSERS pension by removing all the salary and service credit from the 2004–2005 through and including the 2007–2008 school year, thereby subtracting 4.00 years of service credit and all corresponding salary, and added in 3.29 years of service credit from Laboratory beginning July 1, 1998 through December 31, 2001, which salary, service and retirement contributions had previously been unreported for Claimant. The October 14, 2009 Determination reduced Claimant's final average salary from $322,092.88 to $154,063.55. In addition, it reduced Claimant's monthly benefit from $14,150.11 (gross) to $3,253.63 (gross). The October 14, 2009 Determination notified Claimant of her finalized retirement benefit based on an adjusted retirement date of December 1, 2008, of $154,063.55 as a final average salary and 31.34 years of credited service resulting in a gross monthly benefit of $3,253.63.

Claimant timely appealed from the October 14, 2009 Determination to the ESRC. After the October 14, 2009 Determination, PSERS sent Claimant's counsel an index of the documents upon which it had relied to make its October 14, 2009 Determination as well as the documents themselves. Claimant was afforded an opportunity to provide additional information and documentation to the ESRC prior to its Determination, which Claimant did in the form of an Affidavit. Claimant submitted a February 10, 2010 Affidavit, in which she stated, *inter alia:* that she requested Smoot to provide PSERS with general information about her daily work schedule and job responsibilities for the 2004–2005 through 2007–2008 school year; that the information Smoot provided in his May 27, 2008 letter regarding her daily work schedule

was generally correct; that in addition to the work Claimant performed for Laboratory and Ad Prima, she also performed consulting work as an employee of Cynwyd and AcademicQuest for Agora and Planet Abacus; that the work she performed as a consultant for Agora and Planet Abacus was similar to the work she performed for Laboratory and Ad Prima; that she worked for Agora and Planet Abacus as an employee of Cynwyd and AcademicQuest in order to ensure the successful development, operation and management of Agora and Planet Abacus so that Agora and Planet Abacus would be as successful and award winning as Laboratory and Ad Prima; that the work she did for Agora and Planet Abacus was with other Cynwyd and AcademicQuest staff and it occurred on nights and weekends; and that she also performed consulting work for Main Line, which did not require the same level of attention as Agora and Planet Abacus.

On February 18, 2011, the ESRC issued its Determination (February 18, 2011 Determination) denying Claimant's request to reverse the adjustments made to her retirement account in the October 14, 2009 Determination. In particular, the February 18, 2011 Determination concluded that Claimant had not provided sufficient, credible evidence substantiating her claim that she is entitled to retirement credit during the 2004–2005 through 2007–2008 school years. The February 18, 2011 Determination described the discrepancies and missing data that PSERS found, and explained that it did not have objective evidence on which it could rely to substantiate Claimant's daily schedule and appropriate salary for the years in question. The ESRC

found that the adjustments PSERS made to Claimant's salary and service were correct.

On or about March 18, 2011, Claimant filed a timely appeal and request for an administrative hearing. On January 12 and 13, 2012, an administrative hearing was held before a Hearing Officer. On August 3, 2012, the Hearing Officer filed an opinion and recommendation that Claimant's request to credit her with one year of credited service for the 2004–2005 through and including 2007–2008 academic years be .denied and her appeal be dismissed. Claimant filed exceptions to the Hearing Officer's opinion and recommendation, and requested oral argument before the Board. On December 6, 2012, the Board denied Claimant's oral argument request, adopted the Hearing Officer's Findings of Fact, Conclusions of Law, Discussion and Recommendation, and denied Claimant's request to credit her with one year of credited service for the academic years in question. Claimant appealed to this Court.[1]

■ Claimant first argues that the Board abused its discretion and erred as a matter of law by failing to adopt the parties' Stipulations[2] and, on the basis of such Stipulations to give Claimant one year of credited service for each of the years in question. Specifically, Claimant contends that both parties stipulated: Laboratory reported Claimant as working 261 days during the 2004–2005 school year, 261 days during the 2005–2006 school year, 260 days during the 2006–2007 school year and 260 days during the

1.  Our scope of review on an appeal from a final adjudication of an administrative board is limited to a determination of whether there has been an error of law, whether there has been a violation of constitutional rights, or whether the necessary

findings of fact are supported by substantial evidence.
*Hoerner v. Pub. Sch. Employees' Ret. Bd.,* 546 Pa. 215, 223, 684 A.2d 112, 116 (1996).

2.  Reproduced Record at 35a–37a.

2007–2008 school year; Ad Prima reported Claimant as working 261 days during the 2004–2005 school year, 261 days during the 2005–2006 school year, 260 days during the 2006–2007 school year and 260 days during the 2007–2008 school year; Claimant received a salary from Laboratory and Ad Prima; and that required member contributions were made. The Stipulations also contained two additional factual statements regarding Claimant's employment status: (1) "In October 1997, Claimant incorporated [Laboratory] . . . and became employed by LABORATORY as a **full-time salaried** employee. . . ." and (2) "In January 2003, Claimant incorporated [Ad Prima] . . . and became employed by AD PRIMA as a **full-time salaried employee**. . . ." Reproduced Record (R.R.) at 35a (emphasis added).

■ Claimant maintains that Section 211.2 of the Board's Regulations, 22 Pa. Code § 211.2, defines a full-time employee as employed for at least 5 hours per day or 25 hours per week; and, Section 8302(a) of the Public School Employees' Retirement Code (Retirement Code), provides that "a full-time salaried school employee shall receive one year of credit for each school year. . . ." 24 Pa.C.S. § 8302(a). Therefore, the Board erred in failing to adopt the parties' Stipulations and grant Claimant one year of credited service for each year she worked as a full-time employee. We disagree. "Stipulations of fact are binding on the parties and the Court. This Court, however, may draw its own legal conclusions." *Selective Way Ins. Co. v. Commonwealth*, 1 A.3d 950, 955 n. 3 (Pa.Cmwlth.2010) (citation omitted).

The Pennsylvania Supreme court has held:

> [U]nder the Retirement Code, **an employee can only receive retirement credit for the time period where the employee actually engaged in work**

**for the school district** and received regular remuneration for that work. In cases of doubt, the Board determines whether an individual is a school employee for purposes of the Retirement Code.

*Hoerner v. Pub. Sch. Employees' Ret. Bd.*, 546 Pa. 215, 227, 684 A.2d 112, 118 (1996) (emphasis added). The issue in this case is not whether Claimant was hired as a full-time salaried employee as the Stipulation indicates, but rather how many hours Claimant "actually engaged in work for the school district" during the time periods in question. *Id.* Further, the Stipulation refers to the number of days Laboratory and Ad Prima "reported" Claimant worked; it does not mean the parties agreed she "actually" worked that number of days. Thus, the Stipulation, as adopted, did not require the Board to credit Claimant for one year of credited service for each of the years in question.

■ Claimant next contends that the Board's conclusion that Claimant was not entitled to receive credited service for the 2004–2005 through and including the 2007–2008 school years for her employment with Laboratory and Ad Prima was not supported by substantial evidence and an error of law. Specifically, Claimant contends that PSERS offered no documentary evidence to rebut the record evidence submitted by Claimant regarding her work hours, i.e., the Form 990s (salaries and service submitted by Claimant's employers to PSERS). In addition, Claimant maintains that there was testimonial evidence setting forth hours where Claimant worked only for Laboratory and Ad Prima. Moreover, Claimant asserts that her involvement with other entities is irrelevant to the calculation of her benefits because she delegated most of her duties for Main Line, and she was never an employee of Agora and Planet Abacus.

The Board responds that the Form 990s were not the only documents in the record showing Claimant's work hours. There is also Smoot's May 27, 2008 letter (showing Claimant worked 53 hours per week for Laboratory and Ad Prima for each of the school years); and Claimant's February 18, 2010 Affidavit (containing assertions that she performed consulting work for Cynwyd and AcademicQuest on nights and weekends, and she also performed consulting work for Main Line). In addition, Claimant testified and provided testimony from: Courtney Knight (Knight) (who testified that Claimant worked with him on nights and weekends on matters related to Laboratory); Doris Evans (Evans) (who testified that Claimant met with her on nights and weekends to review Ad Prima and Laboratory matters); and Howard Lebofsky (Lebofsky) (who testified that he was on the Boards of Laboratory, Agora and Planet Abacus, and Claimant blended her work with all the entities throughout the day). The Board asserts that Claimant had the burden of proof and the opportunity to present evidence as to the **actual** number of hours she worked for Laboratory and Ad Prima, and she failed to meet that burden. We agree with the Board.

> Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. 'In performing a substantial evidence analysis, this [C]ourt must view the evidence in a light most favorable to the party who prevailed before the factfinder' and 'draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party.' In addition, the 'presence of conflicting evidence in the record does not mean that substantial evidence is lacking.'

*Harasty v. Pub. Sch. Employees' Ret. Bd.,* 945 A.2d 783, 787 n. 8 (Pa.Cmwlth.2008) (citations omitted).

Here, when asked on direct examination how many hours she worked for Main Line in 2005, Claimant testified:

> It is very difficult when you start asking someone about the number of hours when you are working with children. And when you are working with more than one group of children, it becomes even more difficult because you can—you know, I can have 20 hours down here but that could actually be 40 hours. It depends.

R.R. at 251a–252a. She continued:

> So it is very, very difficult to pin down whether it is five hours or whether it is six hours. It's a very—it's the—the way the job is it's just hard to say, okay, I spend five hours here, I spend two hours here. All you know is that you worked all day....

R.R. at 253a. More importantly, when asked about the hours listed on the Form 990s with respect to Laboratory and Ad Prima for the school years in question, Claimant stated: "We work all day and half the night, which—this is just some hours that, for the most part, the finance director said, hey, you know, you've got this many hours, put it down...." C.R., Item No. 13 at 158. During cross-examination, when asked "do you have any work product that would confirm your work with Laboratory and Ad Prima during 2004–2008? ... [h]ave you presented any [documentation] today in these exhibits regarding your [hours] that you provided to Laboratory and Ad Prima?" Claimant responded: "I have not presented any today." C.R., Item No. 13 at 230. Thus, Claimant admitted that she had no idea how many hours she worked at each school, and she presented no documentation on that issue.

The testimony of Claimant's own witnesses supports the Board's decision that

Claimant failed to establish the number of hours she worked for each employer. Lebofsky testified when asked "whether or not [Claimant] handled any business with Agora and Laboratory at the same time?":

> There were times when—how would you put it? Well, sort of like the practice of law. You have more than one client and you may take a phone call one minute from one and the next minute from another.
>
> So it wasn't as though there was like—at 4 p.m. I stopped working for School A and begin working for School B. It was obvious that, you know, work was blended.

C.R., Item No. 13 at 51. Lebofsky did not testify regarding any particular number of hours that Claimant worked for either Laboratory or Ad Prima during the school years in question. Knight and Evans both testified that they worked with Claimant for Laboratory and Ad Prima on nights and weekends during the time period in question; however, Claimant testified that this is when she did her work for the other schools. Accordingly, Claimant's evidence failed to establish the number of hours she was "actually engaged in work for" either Laboratory or Ad Prima. *Hoerner,* 546 Pa. at 227, 684 A.2d at 118.

▮ Claimant next argues that the Board erred as a matter of law in concluding that Claimant, rather than her employers, had a duty to account for the hours she worked for Laboratory and Ad Prima in order to receive the correct amount of credited service for each employer. Specifically, Claimant contends that the obligation to keep records regarding an employee's school service lies with the school employer, not the school employee. 24 Pa.C.S. § 8506. Further, Claimant asserts that the obligation to report the percentage of time a full-time salaried employee served is with the school employer, not the school employee. 22 Pa.Code § 215.6(a)(1).

The Board rejoins that if PSERS has reason to believe that the information reported by the school employer is not accurate, PSERS may not rely on the information and the Retirement Code requires it to correct any errors in its records. 24 Pa.C.S. § 8534. Specifically, the Board avers that because Claimant blended her work for Laboratory and Ad Prima with multiple other entities, i.e., Main Line, Cynwyd, Agora, Planet Abacus, and AcademicQuest, PSERS needed to determine if there was an overlap in services. PSERS concluded that Claimant worked for several organizations simultaneously and therefore reduced Claimant's benefits accordingly. Based on this conclusion, the Board maintains that it then became Claimant's burden to establish the amount of "school service" she actually rendered to Laboratory and Ad Prima in order to allow PSERS to compute Claimant's "credited service" for the school years in question, and establish that the service she rendered for those two reporting entities did not overlap with the work she performed for the numerous non-reporting entities for which she also worked. We agree with the Board.

Section 8506(b) of the Retirement Code provides: "At the direction of the [B]oard, the employer shall furnish service and compensation records as well as other information requested by the [B]oard and shall maintain and preserve such records as the [B]oard may require for the expeditious discharge of its duties." 24 Pa.C.S. § 8506(b). Section 215.6(a)(1) of the Board's Regulations requires employers to "report[ ] based on the percentage of time employed, as it relates to full[-]time salaried employees." 22 Pa.Code § 215.6(a)(1). However, "[t]he burden is upon the member to be certain that

PSERS' records are accurate before the member retires." *Hughes v. Pub. Sch. Employees' Ret. Bd.*, 662 A.2d 701, 707 (Pa.Cmwlth.1995). Further, Section 8534(b) of the Retirement Code states:

Should any change or mistake in records result in any member . . . receiving from the system more or less than he would have been entitled to receive had the records been correct, then **regardless of the intentional or unintentional nature of the error and upon the discovery of such error, the [B]oard shall correct the error and so far as practicable shall adjust the payments** which may be made for and to such person in such a manner that the actuarial equivalent of the benefit to which he was correctly entitled shall be paid.

24 Pa.C.S. § 8534(b) (emphasis added). Accordingly, the Board did not err in concluding that Claimant had a duty to account for the hours she worked for Laboratory and Ad Prima in order to receive the correct amount of credited service for each employer.

■ Claimant next contends that her procedural and substantive due process rights were violated by the PSERS' Retirement Benefits Specialist Supervisor and the Board's ESRC impermissibly commingling prosecutorial and adjudicatory functions with regard to the October 14, 2009 and February 18, 2011 Determinations. Specifically relying on *Lyness v. State Board of Medicine*, 529 Pa. 535, 605 A.2d 1204 (1992), Claimant asserts that Peechatka's and the ESRC's involvement in both the October 14, 2009 and February 18, 2011 Determinations constituted an impermissible commingling of the prosecutorial and adjudicative functions which resulted in the deprivation of Claimant's right to due process. Claimant further maintains that Peechatka's testimony establishes the commingling of these separate functions creating both an appearance of bias and a bias in fact.

The Board retorts that *Lyness* is inapposite because the purpose of the ESRC is to review and decide "nonadjudicatory benefit appeals" which are defined as "appeal[s] to the ESRC which [are] resolved without conducting a hearing or issuing an adjudication." 22 Pa.Code § 201.2a. In contrast, an "adjudicatory benefit appeal" is defined as "[a]n appeal from the ESRC to the Board in which a formal hearing is requested and in which an adjudication of the [B]oard is issued. . . ." *Id.* Thus, the Board asserts that the actions of Peechatka and some ESRC members in reviewing and discussing two staff determinations does not constitute commingling of prosecutorial and adjudicative functions because neither determination was an adjudication.

The Board also stresses that *Lyness* involved a disciplinary action taken by the Board of Medicine concerning revocation of a medical license. Here, the recalculation of Claimant's retirement benefits was not based on any charges stemming from Claimant violating the law. *See Krupinski v. Vocational Tech. Sch., E. Northampton Cnty.*, 544 Pa. 58, 674 A.2d 683 (1996). Moreover, notwithstanding the above, even if any commingling is found to exist, it did not prejudice Claimant as the determinations were subject to review by the Board and, in fact, were reviewed by the Board. *See Baillie v. Pub. Sch. Employees' Ret. Bd.*, 993 A.2d 944 (Pa.Cmwlth.1985). We agree with the Board.

In *Lyness*, the Pennsylvania Supreme Court held:

What our Constitution requires . . . is that if more than one function is reposed in a single administrative entity, walls of division [must] be constructed which eliminate the threat or appearance of bias. . . . '[M]ere tangential involvement' of an adjudicator in the decision to initi-

ate proceeding is not enough to raise the red flag of procedural due process. Our constitutional notion of due process does not require a *tabula rasa*. However, where the very entity or individuals involved in the decision to prosecute are 'significantly involved' in the adjudicatory phase of the proceedings, a violation of due process occurs. Such a conclusion is only made more compelling where ... the administrative Board has virtual *carte blanche* in reviewing the Hearing Examiner's findings and replacing it with its own adjudication, with very limited appellate review in the Commonwealth Court.

*Id.* at 546–47, 605 A.2d at 1209–10. Here, Peechatka and the ESRC were not involved in the "adjudicatory" phase. The adjudication took place before the Board, wherein, Peechatka's only involvement was as a witness and the ESRC was not involved at all. Further, as the *Krupinski* Court held:

Unlike the disciplinary action taken by the Board of Medicine in *Lyness*, [Claimant's reduction in benefits] was not based on any charges stemming from some action or inaction by her. In [reducing her benefit amount, ESRC] was not serving in a prosecutorial capacity with regard to [Claimant]. Our Superior Court explained in *In re Kearney*, 136 Pa.Super. 78, 7 A.2d 159 (1939), implicit in the term 'prosecution', in general, is 'the institution and carrying on of a suit in a court of law or equity, to obtain some right, or to redress and punish some wrong.' *Id.* at 82, 7 A.2d at 161. There was no redress or punishment for any wrong involved here.

*Krupinski*, 544 Pa. at 58, 674 A.2d at 686. The Board in the instant case is statutorily mandated to ascertain the actual number of hours worked to ensure that the correct retirement benefits are paid. 24 Pa.C.S. § 8534(b).

Moreover, as expressed in *Baillie:*

Even if we had considered [Claimant's] allegations of due process violations, [s]he did not meet h[er] burden to show that the alleged commingling of advisory and non-prosecutorial functions by counsel resulted in any actual prejudice in the adjudication of h[er] case. According to *Sultanik v. Board of Supervisors of Worcester Township*, 88 Pa.Cmwlth. 214, 488 A.2d 1197, 1202 (1985), a showing of actual prejudice is required where a state agency like PSERS draws all of its legal services from an employed staff.... Commingling of functions threatens an individual's due process rights only where there is the opportunity to prejudice the facts to be found. Because the PSERS Board's legal conclusions are subject to the plenary review of this Court, any possibility of prejudice to [Claimant] is effectively cured by our independent review.

*Baillie*, 993 A.2d at 953 n. 10 (citation omitted). Accordingly, Claimant's procedural and substantive due process rights were not violated by any alleged commingling of prosecutorial and adjudicatory functions.

■ Lastly, Claimant asserts that her procedural and substantive due process rights were violated by the Board's reversal of the May 27, 2008 initial determination of her retirement benefits which resulted in a reduction of her years of service, final average salary and monthly retirement benefits without prior notice and/or hearing. Specifically, Claimant contends that retirement benefits are property rights and, thus, notice and opportunity to be heard are required prior to the deprivation thereof.

■ The Board responds that Claimant specifically waived this issue when she

stated "[Claimant] is not challenging the Hearing Examiner findings in regard to predeprivation hearing and notice" in her Brief in Support of Exceptions to Hearing Examiner's Opinion. C.R., Item No. 24 at 1 n. 1; 1 Pa.Code § 35.213. Notwithstanding, the Board further rejoins that due process is not required because the initial determination of final average salary and the calculation of benefits are the result of a staff function performed by PSERS' retirement processing center and therefore is subject to further review. *Wyland v. Pub. Sch. Employees' Ret. Bd.*, 669 A.2d 1098 (Pa.Cmwlth.1996). We agree with the Board.

Section 35.213 of the General Rules of Administrative Procedure specifically provides:

> Failure to file a brief on exceptions within the time allowed under § 35.211 (relating to procedure to except to proposed report) shall constitute a waiver of all objections to the proposed report. **Objections to any part of a proposed report which is not the subject of exceptions may not thereafter be raised before the agency head in oral argument, or in an application for agency rehearing or reconsideration, and shall be deemed to have been waived.** The agency head may refuse to consider exceptions to a ruling admitting or excluding evidence unless there was an objection at the time the ruling was made or within any deferred time provided by the presiding officer.

1 Pa.Code § 35.213 (emphasis added). Here, Claimant expressly stated in her Brief in Support of Exceptions: "[Claimant] is not challenging the Hearing Examiner findings in regard to predeprivation hearing and notice." C.R., Item No. 24 at 1 n. 1. Thus, because Claimant chose not to pursue this issue at the appropriate time,

she is now precluded from raising it for the first time on appeal.

Even if Claimant had not waived the issue, Claimant pursued all of her appeals which at each stage fully reviewed the Board's reversal of her initial retirement benefits determination. Our *Wyland* decision is controlling here, wherein we stated:

> [Claimant] could, and did, appeal the initial determination of [her] retirement benefits to PSERS' appeal committee and, ultimately, to the [B]oard. [She] filed a brief and a reply brief prior to the hearing before the hearing examiner, attended the hearing and presented evidence, and filed exceptions to the hearing examiner's determination with the [B]oard. As [Claimant] was given notice and a hearing prior to the final determination of [her] retirement benefits, and there exists no authority for a hearing in connection with PSERS' initial review, this claim is meritless.

*Id.* at 1104. Accordingly, Claimant's procedural and substantive due process rights were not violated by the Board's reversal of her initial retirement benefits determination which resulted in a reduction of her years of service, final average salary and monthly retirement benefits without prior notice and/or hearing.

For all of the above reasons, the Board's order is affirmed.

### ORDER

AND NOW, this 18th day of October, 2013, the Public School Employees' Retirement Board's December 11, 2012 order is affirmed.

### CONCURRING AND DISSENTING OPINION BY Senior Judge FRIEDMAN.

While I agree with the majority's disposition of the remaining issues, I disagree with its conclusion that the Stipulations of

Fact (Stipulations) filed by Dr. Dorothy June Hairston–Brown (Claimant) and the Public School Employees' Retirement System (PSERS) did not require the Public School Employees' Retirement Board (Board) to credit Claimant with one year of credited service for each of the academic years in question. Therefore, I respectfully dissent on that issue.

It is well settled that stipulations of fact are binding on both the parties and the court and that the " 'facts effectively stipulated are controlling and conclusive.' " *Kennedy Boulevard Associates I, L.P. v. Tax Review Board of the City of Philadelphia*, 751 A.2d 719, 724 (Pa.Cmwlth.2000) (citation omitted). " 'Where the stipulation [is] clear and unambiguous on its face, we are prohibited from examining evidence[ ] as to the intent of the parties, which is not within the four corners of the stipulation.' " *Id.* (citation omitted). Unlike the majority, I believe that the Stipulations in this case are clear and unambiguous on their face.

The parties stipulated that both Laboratory Charter School of Communication and Language (Laboratory) and Ad Prima Charter School (Ad Prima) hired Claimant "as a full-time salaried employee." (Stipulations of Fact, ¶¶ 4–5.) The parties also stipulated that: (1) Laboratory and Ad Prima reported that Claimant worked between 260 and 261 days for each of the years in question; (2) both schools paid Claimant salaries commensurate with full-time employment; and (3) Claimant contributed to PSERS based on those salaries. (*Id.*, ¶ 7.)

Inexplicably, the majority concludes that these stipulated facts do not establish Claimant's full-time employment status for the years in question. According to the majority, simply because Claimant was hired as a full-time employee and her employers reported how many days she worked "does not mean [that] the parties agreed [that] she actually worked that number of days." (Majority Op. at 726.) I cannot agree.

The law is clear that stipulated facts are "controlling and conclusive." *Kennedy*, 751 A.2d at 724. By signing the Stipulations, PSERS agreed that Claimant worked as a full-time, salaried employee and made the required PSERS contributions for the academic years in question. PSERS cannot now claim otherwise based on extrinsic evidence that conflicts with the stipulated facts. In my view, the Stipulations conclusively establish that, for the years in question, Claimant "actually engaged in work for [Laboratory and Ad Prima] and received regular remuneration for that work." *Hoerner v. Public School Employees' Retirement Board*, 546 Pa. 215, 227, 684 A.2d 112, 118 (1996). Accordingly, I would reverse the Board's decision on this issue and affirm the remainder of the Board's decision.