# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cathy E. Robertson,            :
            Petitioner     :
              :
        v.            :   No. 2156 C.D. 2015
              :   Argued: November 15, 2016
Pennsylvania Public School Employees' :
Retirement System, and Greater     :
Johnstown Career and Technology    :
Center,                    :
          Respondents   :

BEFORE:    HONORABLE ANNE E. COVEY, Judge
              HONORABLE JULIA K. HEARTHWAY, Judge
              HONORABLE DAN PELLEGRINI, Senior Judge

OPINION BY JUDGE HEARTHWAY         FILED: May 18, 2017

Cathy E. Robertson (Claimant) petitions this Court for review of the Public School Employees' Retirement Board's (Board) October 6, 2015 order that found Claimant had not terminated her school service on January 30, 2009, and her service beginning February 4, 2009 was as a school employee, not as an independent contractor. Consequently, the Board determined that Claimant was not entitled to collect retirement benefits beginning on January 31, 2009. We affirm.

Claimant began working for the Greater Johnstown Career and Technology Center (Center) in July 1970. On November 7, 2008, Claimant submitted an Application for Retirement to the Public School Employees' Retirement System (PSERS). At that time, Claimant served as the business manager for the Center, working full-time for approximately $39 per hour. She identified her anticipated retirement date as January 30, 2009.

After submitting her retirement application to PSERS, Claimant notified the Center of her plan to retire. In response, the Center reorganized, eliminating Claimant's business manager position and a senior bookkeeper position held by Melissa McCall. A new position, titled administrative assistant of fiscal operations, was created and filled by McCall. McCall's job responsibilities entailed performing her previous duties as senior bookkeeper in addition to assuming many of Claimant's former duties as business manager.

The Center also made multiple attempts to convince Claimant not to retire, or alternatively, to provide services to the Center in the form of advising and assisting McCall as an independent contractor. Claimant agreed to provide services to the Center and on December 11, 2008, entered into a contract with the Center, effective February 4, 2009. The Center did not advertise or search for any other candidates to fill this role.

Claimant provided services to the Center under the contract from February 4, 2009 through November 1, 2013. During that time, Claimant was also collecting retirement benefits.[1] PSERS had no knowledge that Claimant had continued to work for the Center until it received a letter from the Center, dated October 2, 2013, stating that the Pennsylvania Auditor General's Office found that the Center failed to request PSERS' approval to employ Claimant while she received a monthly annuity from PSERS.[2] The Center then requested that PSERS

---

[1] By letter dated April 22, 2010, PSERS informed Claimant of her finalized retirement monthly benefit of $4,761.80 based on a termination date of January 31, 2009, 35.24 years of credited service and a final average salary of $77,850.82.

[2] The Auditor General periodically advises PSERS of audit results he believes may be connected to a related issue and/or the distribution of an annuity.

retroactively approve Claimant's employment as an independent contractor, effective February 4, 2009.

PSERS denied the Center's request to deem Claimant an independent contractor beginning February 4, 2009 because Claimant did not have a bona fide break in service, but rather maintained a continuation of active employment, performing services which were substantially similar to the duties she performed as business manager. In a letter dated November 1, 2013, PSERS notified Claimant that it rescinded her January 30, 2009 retirement because her subsequent work for the Center constituted a continuation of active employment.[3]

Claimant appealed PSERS' retirement rescission determination to the PSERS' Executive Staff Review Committee (ESRC). By letter dated May 29, 2014, PSERS notified Claimant that the ESRC denied Claimant's request to be considered an independent contractor for the services she rendered to the Center beginning February 4, 2009 based upon its finding that Claimant made a prearranged agreement with the Center to perform similar duties, which constituted a continuation of employment rather than a bona fide break in service. The ESRC also determined that under the totality of the circumstances, Claimant did not serve as an independent contractor, and therefore, continued to serve the Center as a school employee.

---

[3] By letter dated December 20, 2013, PSERS notified Claimant of her finalized retirement monthly benefit of $3,525.38 based on an effective retirement date of November 1, 2013, 39.53 years of credited service and a final average salary of $74,823.34. The new monthly benefit amount reflected an actuarial adjustment to reimburse PSERS for premature benefit payments to Claimant from January 31, 2009 to November 1, 2013 totaling $388,001.23.

Claimant appealed the ESRC's determination to the Board and requested an administrative hearing.[4]  On February 25, 2014, an administrative hearing was held before a hearing officer, who filed an opinion on July 14, 2015, recommending that Claimant's appeal be denied.  Claimant and the Center filed exceptions to the hearing officer's opinion and recommendation.  On October 7, 2015, the Board rejected the exceptions and largely adopted the hearing officer's opinion and recommendation.  Claimant appealed to this Court.[5]

Claimant challenges the Board's determination that she did not experience a termination of service between January 30, 2009 when her employment as business manager for the Center concluded, and February 4, 2009, when her employment under contract with the Center commenced.  Claimant argues that she effectuated a termination of service through a formal transition from an employee to an independent contractor.  Claimant also claims the Board erred by applying a presumption that a break in service of less than 90 days is insufficient to constitute a valid termination of service and that her due process rights were violated when her pension benefits were suspended on or about October 31, 2013, without advance notice.

We will examine first Claimant's argument that she terminated her service as a school employee on January 30, 2009.  Section 8307(a) of the Public

---

[4] The Center filed a petition to intervene which the Board granted on November 5, 2014. The Center filed a brief with this Court.

[5] "Our scope of review on an appeal from a final adjudication of an administrative board is limited to a determination of whether there has been an error of law, whether there has been a violation of constitutional rights, or whether the necessary findings of fact are supported by substantial evidence." *Hairston-Brown v. Public School Employees' Retirement Board,* 78 A.3d 720, 725 n.1 (Pa. Cmwlth. 2013) (quoting *Hoerner v. Public School Employees' Retirement Board,* 684 A.2d 112, 116 (Pa. 1996)).

School Employees' Retirement Code (Retirement Code) provides that "[a]n active or an inactive member who attains superannuation age[6] shall be entitled to receive a superannuation annuity **upon termination of service** and filing of a proper application." 24 Pa.C.S. § 8307(a) (emphasis added). Section 8346(a) of the Retirement Code further provides that if, after a termination of service, "an annuitant returns to school service. . . , any annuity payable to him under this part shall cease effective upon the date of his return to school service. . . ." 24 Pa.C.S. § 8346(a). "School service" is defined as services rendered by a school employee,[7] and the definition of a "school employee" specifically excludes independent contractors.[8]

Our examination thus begins with whether the Board's determination that Claimant had not terminated her service is supported by substantial evidence. "Termination of service" is not defined in the Retirement Code, but the meaning of the phrase was addressed in *Baillie v. Public School Employees' Retirement Board,* 993 A.2d 944 (Pa. Cmwlth. 2010). In *Baillie,* a claimant was appointed as executive director of the Chester County Intermediate Unit in 1982. In September 2006, the claimant informed the Intermediate Unit that he intended to retire in January 2007. However, he agreed to work under an emergency contract[9] until the end of the school year. The claimant purportedly retired on January 5, 2007; he returned to work under contract on January 8, 2007. In determining that the claimant in *Baillie* never experienced a termination of service, this Court explained:

---

[6] Superannuation age is normal retirement age. *See* 24 Pa.C.S. § 8102.

[7] 24 Pa.C.S. § 8102.

[8] A "school employee" is "[a]ny person engaged in work relating to a public school for any governmental entity and for which work he is receiving regular enumeration as an officer, administrator or employee excluding, however, any independent contractor or a person compensated on a fee basis." 24 Pa.C.S. § 8102.

[9] Section 8346(b) carves out an exception to that general rule, under which an annuitant may return temporarily to service and continue to collect retirement benefits in a time of emergency. 24 Pa.C.S. § 8346(b).

5

The Retirement Code states that a member of the retirement system is entitled to receive an annuity "upon termination of service." 24 Pa.C.S. § 8307(a). Although not precedential, the holding in *Estate of Frank B. Fry v. Commissioner of Internal Revenue*, 19 T.C. 461 (T.C. 1952), *aff'd*, 205 F.2d 517 (3d Cir. 1953), is instructive on what is meant by termination of service. In that case, the decedent, who continued to consult for his former employer and draw a salary for these services after taking his lump sum retirement benefit, was found not to have "severed his connection with his employer." *Id.* at 464. Accordingly, his salary was taxable as ordinary income, not capital gain. Likewise, Baillie never severed his connection with the Intermediate Unit. Baillie finished his work week on Friday and returned on Monday, the next business day. This is not a separation; rather, Baillie continued to work without any interruption. Accordingly, Baillie did not become an annuitant in January 2007 and, thus, was not eligible for an emergency hire.

We hold that PSERS' construction and application of the Retirement Code to Baillie's retirement were correct. Baillie never separated from service, and he was not an annuitant when hired on an emergency basis.

*Id.* at 951.

*Fry* involved a tax dispute over whether a "retiree" had genuinely separated from service to his employer. Fry received his retirement pension from his employer's private trust but continued to receive his regular salary and perform some work for his employer. Id. at 462. The court acknowledged that Fry performed less and less work for his employer as time passed; "however, the probative value of these facts had been weakened, if not displaced altogether, by the fact that [Fry] continued to draw his regular salary. . . from [his employer]." Id. at 464. The court held that Fry had not actually retired or separated from the service of his employer.

The significance of the requirement that an annuitant must first experience a bona fide break or termination of service before distribution of an annuity is well established. PSERS, as a tax-qualified plan under 26 U.S.C. § 401(a), must ensure that a distribution is not only consistent with the terms of the Retirement Code, but also complies with the Internal Revenue Code.[10]

> Section 8521(e) of the Retirement Code provides that PSERS and its Board "stand in a fiduciary relationship to the members of the system regarding the investments and disbursements of any of the moneys of the fund." 24 Pa.C.S. § 8521(e). PSERS is responsible for the "uniform administration" of the public school employees' retirement system. 24 Pa.C.S. § 8502(h). To that end, PSERS' interpretation of the Retirement Code should not be overturned unless it is clear that such construction is erroneous. *Panko v. Public School Employees' Retirement System,* 89 Pa. Cmwlth. 419, 492 A.2d 805, 807–808 (1985). In addition, Section 8534(b) of the Retirement Code requires PSERS to correct all intentional or unintentional errors in members' accounts. In other words, PSERS has the duty to correct errors made by public school employers and to make actuarial adjustments to an individual member's benefit payments.

*Baillie,* 993 A.2d at 949–50 (footnotes omitted).

A review of the record in this case reveals that there was substantial evidence to support the Board's conclusion that Claimant had not severed her employment with the Center. In reaching its conclusion, the Board considered evidence that (1) Claimant's planned retirement date, January 30, 2009, was in the middle of the school year; (2) once Claimant announced her retirement, the Center immediately asked her to continue to perform many of her same duties; (3) on

---

[10] Section 401(a)(36) of the Internal Revenue Code prohibits a plan participant from receiving distributions from a qualified plan prior to the death, disability, separation from service, or the attainment of normal retirement age. 26 U.S.C. § 401(a)(36); *see* Rev. Rul. 74-254, 1974-1 C.B. 94. Such "in service distributions" are not generally allowable under defined benefit pension plans.

December 11, 2008, some six weeks prior to her planned retirement date, Claimant signed a contract with the Center to continue providing many of the same or related duties; (4) the duties Claimant agreed to provide were largely a continuation of the work she performed prior to February 4, 2009; (5) the Center did not consider hiring anyone to replace Claimant, did not advertise her position, and made no effort to identify or recruit anyone else; and (6) the time lapse between Claimant's employment and her contract work was only four days (including a weekend).

Claimant nonetheless argues that the Board erred in failing to find that she served the Center as an independent contractor beginning on February 4, 2009. Claimant asserts that because she and the Center intended that she would have the status of independent contractor beginning on February 4, 2009, she was specifically excluded from the definition of school employee, and therefore, she was eligible to collect retirement benefits while continuing to work for the Center.

Claimant contends that she qualifies as an independent contractor based on the factors set forth in *Zimmerman v. Public School Employees' Retirement Board,* 522 A.2d 43 (Pa. 1987), where a school physician sought enrollment in PSERS and credit for services he previously provided to a school district. In *Zimmerman,* the Supreme Court was considering whether the claimant provided services as a school employee or as an independent contractor. Whether a school employee had terminated her service was not an issue in *Zimmerman.*

Claimant's reliance on *Zimmerman* is misplaced. Though the nature of a purported retiree's subsequent work under contract is one relevant factor to be considered when evaluating whether a school employee has genuinely terminated her service so as to qualify to receive retirement benefits, it is not the sole factor.

Accordingly, the Board did not focus solely on the nature of Claimant's contract employment (where her duties were similar and related to her duties as business manager); the Board properly considered all relevant circumstances, including the time lapse between Claimant's work as business manager and her work under contract; the timing of her purported retirement; the timing of execution of the contract for subsequent work; and the fact that the Center made no effort to consider any other candidates for Claimant's position.

Moreover, Claimant's argument ignores existence of Section 8307(a) of the Retirement Code, which establishes the bona fide termination of service as a precondition to an employee attaining annuitant status. 24 Pa.C.S. § 8307(a). Where a school employee never terminates her service, she has not become a valid annuitant. Claimant's argument that her purported "independent contractor" status alone is definitive proof of having terminated an existing employment relationship is without merit. This is a circular argument that would require us to only examine a potential subsequent change in the work relationship while ignoring other factors critical to ascertaining whether there was first a bona fide termination. The Board did not err in determining that Claimant was not entitled to collect retirement benefits for the period beginning on January 31, 2009.

Claimant also contends that the Board erred by applying a presumption that a break in service of less than 90 days is insufficient to constitute a valid termination of service. However, our review of the Board's decision in this matter reveals that the Board based its decision on the factors discussed above, not on the application of any 90-day rule.[11]

_____

[11] The 90-day presumption referred to by Claimant is an internal policy or rule to guide PSERS staff on whether PSERS should request additional information regarding the circumstances of a member's termination of service.

Lastly, Claimant contends that the Board erred by ruling that Claimant's due process rights were not violated when it suspended Claimant's pension benefits without notice. This Court rejected that same argument in *Hairston-Brown v. Public School Employees' Retirement Board,* 78 A.3d 720 (Pa. Cmwlth. 2013):

> Claimant pursued all of her appeals which at each stage fully reviewed the Board's reversal of her initial retirement benefits determination. Our *Wyland* [*v. Public School Employees' Retirement Board,* 669 A.2d 1098 (Pa. Cmwlth. 1996)] decision is controlling here, wherein we stated:
>
> > [Claimant] could, and did, appeal the initial determination of [her] retirement benefits to PSERS' appeal committee and, ultimately, to the [B]oard. [She] filed a brief . . . prior to the hearing before the [H]earing [E]xaminer, attended the hearing and presented evidence, and filed exceptions to the [H]earing [E]xaminer's determination with the [B]oard. As [Claimant] was given notice and a hearing prior to the final determination of [her] retirement benefits, and there exists no authority for a hearing in connection with PSERS' initial review, this claim is meritless.
>
> *Id.* at 1101. Accordingly, Claimant's procedural and substantive due process rights were not violated by the Board's reversal of her initial retirement benefits determination which resulted in a reduction of her . . . final average salary and monthly retirement benefits without prior notice and/or hearing.

*Hairston-Brown,* 78 A.3d at 731.

For the above reasons, the Board's order is affirmed.

_____
JULIA K. HEARTHWAY, Judge

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cathy E. Robertson,                                          :
                              Petitioner                     :
                                                             :
                    v.                                       :        No. 2156 C.D. 2015
                                                             :
Pennsylvania Public School Employees' :
Retirement System, and Greater               :
Johnstown Career and Technology         :
Center,                                                       :
                              Respondents    :

# O R D E R

AND NOW, this 18th day of May, 2017, the Public School Employees'
Retirement Board's October 6, 2015 order is affirmed.


_____
JULIA K. HEARTHWAY, Judge

Cathy E. Robertson, : 
                Petitioner : 
                        :
                  v. : 
                        :
Pennsylvania Public School Employees' : 
Retirement System, and Greater : 
Johnstown Career and Technology : 
Center, :   No. 2156 C.D. 2015 
            Respondents :   Argued: November 15, 2016


BEFORE:   HONORABLE ANNE E. COVEY, Judge
                HONORABLE JULIA K. HEARTHWAY, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge


CONCURRING/DISSENTING OPINION
BY JUDGE COVEY                     FILED: May 18, 2017


      I concur with the Majority's rulings that Cathy E. Robertson's (Claimant) due process rights were not violated, and the Public School Employees' Retirement Board (Board) did not base its decision on the application of the 90-day rule, i.e., the Public School Employees' Retirement System's (PSERS) Business Rule (Business Rule).[1] However, I respectfully dissent from the Majority's conclusion that Claimant was not entitled to collect retirement benefits for the period beginning January 31, 2009 because there was no bona fide termination of school service.

      Claimant began working for the Greater Johnstown Career and Technology Center (Center) in July 1970. On November 7, 2008, Claimant submitted a PSRS-8 Application for Retirement (Retirement Application) to PSERS,

---

[1] The Business Rule provides, in relevant part: "PSERS has adopted a '90[-]day presumption rule' as it relates to a break in service, i.e.[,] PSERS will presume a break in service if there is an employer termination and the employee does not return to school service for 90 days." Reproduced Record, Vol. I at 199. We recognize that the Business Rule, although approved May 16, 2013, was not promulgated as a formal regulation.

wherein she designated January 30, 2009 as her anticipated retirement date. Also on November 7, 2008, Claimant attended a retirement exit counseling session at which she was informed that working for a PSERS employer after retirement will cause her pension to be frozen unless such return is during an emergency or shortage or in an extracurricular position. Claimant signed a Retirement Exit Counseling Checklist (Exit Checklist) confirming her attendance at the retirement exit counseling session. At the time she signed the Retirement Application and Exit Checklist, Claimant did not intend to provide services to the Center as an independent contractor, and had not been a party to any discussions with the Center's personnel about doing so.

During discussions with the Center's Administrative Director John Augustine, II (Augustine) in January 2008, Claimant advised him of her tentative retirement in 2009. However, it was not until after she had submitted her Retirement Application and Exit Checklist that Claimant formally notified the Center's Joint Operating Committee Chairmen, Alan Tresnicky (Tresnicky) and Augustine, of her January 30, 2009 retirement date. Because Claimant's anticipated retirement date was to occur during the middle of the school year, upon being formally informed of Claimant's pending retirement, Augustine consulted with Tresnicky and Chief School Administrator Dr. DiBartola regarding how to staff Claimant's job responsibilities. Neither Augustine nor Tresnicky approached Claimant about providing services to the Center after her retirement until Claimant submitted her Retirement Application and Exit Checklist to PSERS.

After being informed of Claimant's pending retirement, the Center decided to outsource Claimant's business manager position, perform a reorganization, and attempt to retain Claimant's services as an independent contractor. As part of the Center's reorganization, the Center eliminated Claimant's business manager position and the senior bookkeeper position held by Melissa McCall (McCall), and created a new position titled administrative assistant of fiscal operations to be filled by McCall.

McCall's job responsibilities as fiscal operations' administrative assistant entailed performing all of her senior bookkeeper duties, plus assuming nearly all of Claimant's former business manager duties. After eliminating the senior bookkeeper and business manager positions and reorganizing the department, the Center identified the need for someone to assist the business office until McCall was sufficiently trained.

Due to Claimant's institutional knowledge, she was identified as the preferred trainer for McCall. Tresnicky and Augustine made multiple attempts to convince Claimant not to retire, or, alternatively, to provide services to the Center as an advisor and/or independent contractor to assist McCall. Claimant initially declined to serve as an independent contractor. On or about December 8, 2008, after consulting with her husband, Claimant agreed to provide services to the Center beginning after her effective retirement date. Claimant informed the Center that she did not desire to work many hours, did not want to be required to come into the office for work, and wished to work her own hours because she anticipated performing much of her work at night. On December 11, 2008, Claimant entered into a Business/Administrative Services Support Contract with the Center, effective February 4, 2009, to perform 13 out of the 38 job duties and responsibilities she previously performed as business manager (Contract).

Pursuant to the Contract, Claimant's responsibilities primarily shifted from being responsible for all day-to-day operations, assigning work and ensuring work was completed as business manager, to assisting the business office in an advisory capacity. Subsequent to January 30, 2009, Claimant continued to perform 13 of the 38 duties and responsibilities she had previously performed as business manager, as well as additional duties and responsibilities which had not existed when she was business manager, such as: administering grants under the American

Recovery and Reinvestment Act of 2009,[2] and assisting Augustine in his new role as Secretary of the Pennsylvania Association of Career & Technical Administrators. Claimant provided services to the Center under the Contract from February 4, 2009 through November 1, 2013.

Claimant and the Center argue that the Board erred by determining that Claimant was not an independent contractor after January 31, 2009 and, thus, subject to participation as an active PSERS member. Specifically, Claimant and the Center contend that Section 215.5(d)(3) of the Board's Regulations, 22 Pa. Code § 215.5(d)(3), and *Zimmerman v. Public School Employes' Retirement Board,* 522 A.2d 43 (Pa. 1987) control this matter, as opposed to the Business Rule. The Board rejoins that *Zimmerman* does not apply because Claimant was not newly entering an employment relationship with the Center, but rather, she was continuing her prior Center employment. The Board further asserts that the Contract did not create a bona fide termination of services as contemplated by the Public School Employees' Retirement Code (Retirement Code).[3]

The Majority maintains: "Claimant's reliance on *Zimmerman* is misplaced. **Though the nature of a purported retiree's subsequent work under contract is one relevant factor to be considered** when evaluating whether a school employee has genuinely terminated her service so as to qualify to receive retirement benefits, **it is not the sole factor**." Majority Op. at 8 (emphasis added). However, the Majority, like the Board, appears to have ignored this factor altogether.

Initially, Section 8301 of the Retirement Code provides, in pertinent part:

---

[2] Act of February 17, 2009, P.L. 111-5, 123 Stat. 437, *as amended,* § 2002(f), 26 U.S.C. § 3304 Note.

[3] 24 Pa.C.S. §§ 8101-8536.

**(a) Mandatory membership.--Membership in the system shall be mandatory as of the effective date of employment for all school employees** except the following:

(1) Any officer or employee of the Department of Education, State-owned educational institutions, community colleges, area vocational-technical schools, technical institutes, or the Pennsylvania State University and who is a member of the [PSERS] or a member of another retirement program approved by the employer.

(2) Any school employee who is not a member of the system and who is employed on a per diem or hourly basis for less than 80 full-day sessions or 500 hours in any fiscal year or annuitant who returns to school service under the provisions of [S]ection 8346(b) [of the Retirement Code, 24 Pa.C.S. § 8346(b)] (relating to termination of annuities).

(3) Any officer or employee of a governmental entity who subsequent to December 22, 1965 and prior to July 1, 1975 administers, supervises, or teaches classes financed wholly or in part by the Federal Government so long as he continues in such service.

(4) Any part-time school employee who has an individual retirement account pursuant to the Federal act of September 2, 1974 (Public Law 93-406, 88 Stat. 829), known as the Employee Retirement Income Security Act of 1974.

24 Pa.C.S. § 8301 (text emphasis added). Section 8307(a) of the Retirement Code provides: "An active or an inactive member who attains superannuation age[4] shall be entitled to receive a superannuation annuity upon **termination of service _and_ filing of a proper application**. All members must begin receiving a superannuation annuity by the member's required beginning date." 24 Pa.C.S. § 8307(a) (emphasis added). Further, Section 8102 of the Retirement Code defines "[**d**]**ate of termination of service[]"** as "[t]he last date of service for which pickup contributions are made for an active member or, in the case of an inactive member,

---

[4] Superannuation age is normal retirement age. _See_ 24 Pa.C.S. § 8102.

**the effective date of his resignation or the date his employment is formally discontinued by his employer** or two years following the last day of service for which contributions were made, whichever is earliest." 24 Pa.C.S. § 8102 (text emphasis added). Section 8102 of the Retirement Code defines a school employee as "[a]ny person engaged in work relating to a public school for any governmental entity and for which work he is receiving regular remuneration as an officer, administrator or employee **excluding**, however, **any independent contractor** or a person compensated on a fee basis." 24 Pa.C.S. § 8102 (emphasis added). Moreover, Section 215.5(d)(3) of the Board's Regulations provides:

> In cases of doubt, the Board will determine whether any person is a school employee within the meaning of the Retirement Code. **The Board will** also **determine whether a person is an independent contractor** or a person compensated on a fee basis **upon review of all the circumstances surrounding the employment of the person** seeking membership in the program.

22 Pa. Code § 215.5(d)(3) (emphasis added). Here, the Board did not reach the issue of whether Claimant was a school employee or an independent contractor, but rather determined that Claimant's January 31, 2009 retirement was a nullity because "Claimant did not experience a **bona fide termination of school service**, effective January 31, 2009." Board Op. at 22 (emphasis added).

In *Zimmerman,* our Supreme Court addressed the issue of whether a school physician was a school employee for purposes of PSERS eligibility. The *Zimmerman* Court relied upon the factors established in *Hammermill Paper Co. v. Rust Engineering Co.,* 243 A.2d 389 (Pa. 1968), to determine that the school physician was, in fact, an independent contractor. Those factors included:

> Control of manner work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; skill required for performance; whether one is engaged in a distinct

occupation or business; which party supplied the tools; whether payment is by the time or by the job; whether work is part of the regular business of the employer, and also the right to terminate the employment at any time.

*Hammermill,* 243 A.2d at 392 (quoting *Stepp v. Renn,* 135 A.2d 794, 796 (Pa. Super. 1957)).

However, in the instant case, the Board, citing *Baillie v. Public School Employees' Retirement Board,* 993 A.2d 944 (Pa. Cmwlth. 2010), ruled that the dispositive issue was not whether Claimant's Contract fell within the independent contractor factors but, rather, whether Claimant experienced a bona fide break or termination of service.

In *Baillie,* the claimant was appointed the Executive Director of the Chester County Intermediate Unit in 1982. In September 2006, the claimant informed the Intermediate Unit's Board that he intended to retire in January 2007. However, he agreed to work under an emergency contract until the end of the school year. In light of the challenges facing the Intermediate Unit, and the perceived shortage of qualified candidates to replace the claimant, the Board voted at its November 2006 meeting to employ the claimant under an emergency contract until June 30, 2007. The claimant retired on Friday, January 5, 2007. After spending the weekend in retirement, the claimant returned to his job as Executive Director on Monday, January 8, 2007. The *Baillie* Court held:

> [The claimant] never severed his connection with the Intermediate Unit. [The claimant] finished his work week on Friday and returned on Monday, the next business day. This is not a separation; rather, [the claimant] continued to work without any interruption. Accordingly, [the claimant] did not become an annuitant in January 2007 and, thus, was not eligible for an emergency hire.
>
> . . . . [The claimant] never separated from service, and he was not an annuitant when hired on an emergency basis.

*Id.* at 951.

*Baillie* is clearly distinguishable from the case sub judice. First, Claimant did not return to her original job. Upon learning of Claimant's pending retirement, the Center eliminated **Claimant's business manager position** and reorganized the department. *See* Certified Record Tab 14, Notes of Testimony February 25, 2015 (N.T.) at 152-153; *see also* Findings of Fact (FOF) 14 and 15. Further, Claimant did not agree to continue her employment when asked by the Center, but rather steadfastly refused, stating that she did not want to work many hours, did not want to come into the office and wanted to work at night. *See* N.T. at 24; *see also* FOF 19, 20, 22. Finally, while Claimant's original position as a Center employee required her to fulfill 38 specific duties and work 40 hours per week in the Center's office, her new position entailed only a fraction of those duties, was strictly advisory in nature and required only half of the hours which she performed from her home. Because Claimant did, in fact, sever her service as the Center's business manager when Claimant finished her January 31, 2009 work week, as it is undisputed that her position was eliminated, her employment was separated at that time. Accordingly, *Baillie* is inapposite.

Having determined that *Baillie* does not apply, we address the statutory issue of whether Claimant was an employee or an independent contractor. "Whether a claimant is an employee or an independent contractor is a question of law subject to our review." *Tobey-Karg Sales Agency, Inc. v. Pa. Dep't of Labor & Indus.,* 34 A.3d 899, 903 (Pa. Cmwlth. 2011). "The cases demonstrate that no one factor is dispositive of one's status and that each case must be determined on its own facts. Using *Hammermill* as a guide, we turn to the facts established in this case." *Zimmerman,* 522 A.2d at 45.

First, the Contract is entitled: "BUSINESS/ADMINISTRATIVE SERVICES **SUPPORT CONTRACT** BETWEEN [THE CENTER] AND CONTRACTOR [CLAIMANT]."

Reproduced Record (R.R.) Vol. I at 155a (emphasis added). The Contract provides that it is "effective February 4, 2009 and shall continue year-to-year **unless terminated by either party** with a 60-day notice." *Id.* (emphasis added). Claimant's pay under the Contract is "$35.00 **per hour**, with a [Internal Revenue Form] **1099** to be issued each calendar year." *Id.* (emphasis added).

In addition, Claimant testified that her work performed under the Contract took place "at [her] home." N.T. at 31. Claimant further related that she no longer had an office at the Center and she used her own equipment and supplies to do her Center work, i.e., computer, printer, paper, pens, ink cartridges. *See* N.T. at 32. Claimant explained that she had no set hours, but she had an understanding with the Center that she would not work more than 20 hours per week. *See* N.T. at 35. Moreover, Claimant described preparing invoices approximately every two weeks which needed to be approved before she would be paid for her services. *See* N.T. at 37.

Prior to her retirement, Claimant was paid a salary, received a W-2, worked 40 hours a week and had significantly more duties and responsibilities. In addition, Claimant worked at the Center's office with the Center's equipment and supplies. "Under the facts and circumstances of this case[,] it is . . . inescapable that [Claimant] is an independent contractor, and not a 'school employee' as defined in [Section 8102 of the Retirement Code]." *Zimmerman,* 522 A.2d at 46. Accordingly, the Board erred by determining that Claimant was not an independent contractor of the Center after January 31, 2009 and, thus, subject to participation as an active PSERS member.

For all of the above reasons, I would reverse the Board's Order.

_____
ANNE E. COVEY, Judge

AEC - 9